IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 00-00184 HG |
| | ) |
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF |
| | ) MOTION TO COMPEL |
| vs. | ) PRODUCTION OF GRAND JURY |
| | ) TRANSCRIPTS |
| JORGE CASAS, (01) | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL PRODUCTION OF GRAND JURY TRANSCRIPT

I.   FACTS:

Defendant JORGE CASAS has been charged in a twenty-count second superseding indictment of a drug conspiracy arising out of an alleged incident that occurred from May 1, 1999 through May 4, 2000.  A federal grand jury charged Defendant in a superseding indictment on June 6, 2001.  A prior superseding indictment was also obtained, and the original indictment was issued on May 25,

2000.

Defendant received a discovery letter from ASUA Thomas Mueleck, dated March 25, 2005, that included notice of a letter, dated July 18, 2000 sent to Mr. Peter Wolf, Federal Public Defender, from an anonymous FBI special agent. This letter described a series of misconduct and serious misrepresentations made by the case agent in this case, DEA agent Michael Rothermund. (See Exhibit "A"). According to the letter - the investigation involved the DEA wiretap case on Maui known as "Operation Power ball" – it describes the misconduct that occurred during the investigation.

The letter asserts, among other things, the following: Case Agent Rothermund lied several times in the affidavit for the wiretap and in various 30 day extensions regarding the necessity requirement and the fact that surveillance had been tried unsuccessfully; DEA had an undercover agent making direct buys from co-defendant Felipe Ruiz-Castro and the covert operation could have gone much further in uncovering the drug ring which would preclude the necessity of a wiretap; and little to no surveillance was attempted prior to requesting a wiretap, contrary to what was represented in the affidavit supporting the wiretap.

Presumably, the case agent's grand jury testimony says that the suspects were

talking about drugs in the phone when there is no credible evidence to support this; as the letter states that the code(s) for determining when the suspects were talking about drugs was never corroborated.

Additionally, in letter dated March 21, 2000, from the U.S. Attorney's Office the government disclosed misconduct of DEA agent Rothermund on a prior investigation. (See Exhibit "B")

II. ARGUMENT

    A.    The Court Should Grant Discovery Because The Defense Has Established A "Particularized Need" For The Transcripts That Outweighs The Grand Jury Policy Of Secrecy.

Federal Rule of Criminal Procedure 6(e)(3)(C)(i) specifically provides for disclosure of grand jury transcripts "when so directed by a court preliminarily to or in connection with a judicial proceeding[.]" Courts that have construed a defendant's right to grand jury transcripts have generally held that a defendant must show "a particularized need" for the transcripts which outweighs the "policy of secrecy." Pittsburgh Plate Glass Co v. United States, 360 U.S. 395, 400 (1959). The Ninth Circuit has held that the "need to impeach testimony or refresh recollection at trial can establish a particularized need for disclosure of grand jury transcripts." United States v. Fischbach And Moore. Inc., 776 F.2d 839, 845 (9th Cir. 1985).

In the instant case, Mr. Casas has met the "particularized need" burden. During the discovery in this case, defense obtained an anonymous letter addressed to Mr. Peter Wolf, Federal Public Defender regarding alleged misconduct and false statements of case agent Michael Rothermund. This letter described a series of misconduct and serious misrepresentations made by the case agent in this case, DEA agent Michael Rothermund. The letter asserts, among other things, the following: Case Agent Rothermund lied several times in the affidavit for the wiretap and in various 30 day extensions regarding the necessity requirement and the fact that surveillance had been tried unsuccessfully; DEA had an undercover agent making direct buys from co-defendant Felipe Ruiz-Castro and the covert operation could have gone much further in uncovering the drug ring which would preclude the necessity of a wiretap; and little to no surveillance was attempted prior to requesting a wiretap, contrary to what was represented in the affidavit supporting the wiretap. Moreover, defense is of the belief case agent Rothermund testified to the grand jury who returned an indictment against Mr. Casas. Clearly, this witness is crucial to the defense because he may have intentionally misled the grand jurors and the defense needs to investigate the veracity and honesty of the government's witness at grand jury. Production of the grand jury transcripts to avoid a possibility of injustice, and.

Case 1:00-cr-00184-HG    Document 681-2    Filed 04/20/2006    Page 5 of 8

B. The Court Should Order The Disclosure Because the need for disclosure on the grand jury proceedings is greater than the need for continued secrecy as this is the last defendant in this case.

The decision whether to order the disclosure of grand jury testimony is one committed to the sound discretion of the trial court. United States v. Fuentes, 432 F2d 405 (5th Cir. 1970). That decision rests on a determination of whether the policies behind the traditional veil of secrecy that surrounds grand jury proceedings will be undermined by disclosure. The Supreme Court in United States v. Procter and Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) quoted with approval the Third Circuit's concise delineation of the reasons behind the policy of secrecy:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect (sic) innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from

the expense of standing trial where there was no probability of guilt." 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 quoting with approval from United States v. Rose, 215 F2d 617, 628, 629 (3d Cir. 1954).

In the instant case, Defendant is believed to be the last of the defendants to be prosecuted in this investigation. None of the reasons behind the policy of secrecy apply at this point for this case. The defense is of the belief the grand jury testimony of case agent Rothermund may be misleading. Clearly, the grand jury testimony and statements of the witnesses are relevant and material to the defense. The statements of this witness is suspect as evidenced by the misconduct described in the letters and affect the credibility of case agent Rothermund, the most crucial government witness called to bring an indictment at the grand jury.

C. The Court Should Invoke Its Supervisory Power And Order The Disclosure.

Under the circumstances of this case, the court has the inherent power to fashion an order to promote the proper administration of justice. See United States v Azmstrona, 621 Fed.2d 951, 954-55 (9th Cir. 1980).

The court clearly has the authority to order the government to disclose the grand jury testimony, notwithstanding the "policy of secrecy." Qt. United States v. Samango, 607 F.2d 877, 881 (9th Cir. 1979) (district court, as overseer of grand

jury, may exercise its "supervisory power" only where "there is a clear basis in fact and law for doing so").

The rule is well-established that "in the absence of controlling authority to the contrary, a district court may issue such orders as are necessary to ensure justice. Courts do not hesitate to rely on their inherent supervisory power to order the government in criminal cases to divulge the names of prospective trial witnesses. In United States v. Richter, 488 F.2d 170, 173-74 (9th Cir. 1973), the court stated:

> It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." [Citations omitted.] It would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all. Such discretion is not limitless, but appellate review provides a proper check.  Accord Arizona v. Manypenny, 672 F.2d 761, 765 (9th Cir.) (district court has inherent supervisory power to enter orders "not expressly sanctioned by rule or statute"), cert. denied, 459 U.S. 850 (1982).

III. CONCLUSION

For the foregoing reasons, the court should order the government to disclose the grand jury testimony and all statements of grand jury witnesses.

DATED: Honolulu, Hawaii, April 20, 2006.

_____
/s/MICHAEL J. PARK
Attorney for Defendant
JORGE CASAS