FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 0 8 2000

at _8_ o'clock and _00_ min. _A_ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 98-00591 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR JUDGMENT OF |
| vs. | ) | ACQUITTAL AND/OR NEW TRIAL |
| | ) | |
| STEVEN BROOKS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER DENYING DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

Following convictions for knowingly and intentionally distributing in excess of 100 grams of crystal methamphetamine and conspiracy to distribute controlled substances in violation of sections 841(a)(1) and 841(b)(1)(A) of Title 21 of the United States Code, Defendant Steven Brooks ("Brooks") moved for judgment of acquittal and/or a new trial pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure. Because a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, and because no circumstances cited by Brooks resulted in a miscarriage of justice, the court denies the motion for judgment of acquittal and the motion for a new trial.

BACKGROUND

On April 14, 1999, a Third Superseding Indictment was filed against Brooks on charges that he knowing and intentionally distributed in excess of 100 grams of crystal methamphetamine (Count 1), and that he conspired to knowingly and intentionally

EXHIBIT 4

00050

distribute controlled substances (Count 2), all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[1]

On April 18, 2000, after a seven-day trial, the jury found Brooks guilty of Counts 1 and 2. Thereafter, the court instructed the jury with respect to Count 3. Count 3 of the Third Superseding Indictment sought forfeiture of residential real property located at 6312 Turnberry Circle on the theory that Brooks had used the proceeds of the drug conspiracy charged in Count 2 to purchase the property. The jury found that the real property did constitute or derive from proceeds Brooks had obtained directly or indirectly as a result of the drug conspiracy.

On April 25, 2000, Brooks filed a Motion for Judgment of Acquittal and/or New Trial.[2]

---

[1] The Third Superseding Indictment also contained another conspiracy charge, Count 4, which was dismissed before trial.

[2] After the verdict was read, Brooks asked that he be allowed to proceed pro se. On May 31, 2000, the Magistrate Judge granted Brooks' request, allowed Brooks' trial attorneys, Milton Grimes and Keith Shigetomi, to withdraw, and appointed stand-by counsel David Klein.

While Brooks' pro se status was being considered, Brooks' counsel filed a Motion for Judgment of Acquittal and/or New Trial on April 25, 2000. Thereafter, Brooks, proceeding pro se, asked to supplement the Motion for Judgment of Acquittal and/or New Trial filed by his former counsel. The court granted the request and Brooks filed the following documents, all of which the court considers in connection with this motion: 1) "Motion for Judgment of Acquittal and/or New Trial" filed on May 30, 2000; 2) "Timely Addendum to Timely Filed Supplemental Brief to Timely Filed Motion for Judgment of Acquittal and/or New

-2-

## STANDARD

In deciding a Rule 29 motion for acquittal, the court must look to all the evidence and, viewing the evidence in the light most favorable to the government, determine whether "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Alston, 974 F.2d 1206, 1210 (9th Cir. 1992); United States v. Bishop, 959 F.2d 820, 829 (9th Cir. 1992) (a sufficiency of the evidence claim is reviewed "to determine 'whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'").

Rule 33 provides that a court may grant a motion for a new trial if required in the interests of justice. Rule 33 "recognizes the traditional principle that the trial court has broad powers to grant a new trial if for any reason it concludes that the trial has resulted in a miscarriage of justice." 3 Charles Alan Wright, Federal Practice & Procedure § 551 (2d ed. 1982). Despite this broad authority, however, motions for new trials are not favored and new trials are to be granted with

---

Trial" filed on June 1, 2000; 3) "Supplement to Brooks' Motion for Judgment of Acquittal or New Trial" filed on June 21, 2000; and 4) a letter dated July 6, 2000. The court also considers the oppositions filed by the United States and "Defendant's Reply Memorandum in Support of Defendant's Motion for Judgment of Acquittal and/or New Trial," filed on August 1, 2000.

-3-

00052

caution. See id. § 553. The decision to grant a new trial is within the sound discretion of the trial court. United States v. Powell, 932 F.2d 1337, 1340 (9th Cir.), cert. denied, 502 U.S. 891 (1991). The burden of justifying a new trial rests with Brooks. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986).

ANALYSIS

I. Motion for Judgment of Acquittal

    A. Count 1

        1. Sufficient Evidence Supported Count 1.

Brooks argues that there was insufficient evidence to support his conviction in Count 1. In Count 1, Brooks was charged with having knowingly and intentionally distributed in excess of 100 grams of crystal methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(B)(1)(A). The court instructed the jury that, to prevail on that charge, the government had to prove each of the following elements beyond a reasonable doubt: 1) that Brooks intentionally delivered crystal methamphetamine to another person; and 2) that Brooks knew that what he was delivering was crystal methamphetamine or some other prohibited drug.

Viewing the evidence in the light most favorable to the United States, a rational trier of fact could have found Brooks guilty beyond a reasonable doubt of Count 1. Ample evidence existed in the form of testimony by Special Agent Gerald Lawson,

includes transactions in large quantities of drugs, prolonged cooperation and "fronting," and standardized transactions). Wong's testimony was corroborated by telephone records and financial records.

Because there was sufficient evidence based on which a jury could have found Brooks guilty beyond a reasonable doubt of conspiracy, the court denies his motion for acquittal on Count 2.

    C.    <u>Count 3</u>

Brooks argues that, "if judgment of acquittal should be issued for Counts 1 and 2, it follows that it should also be issued for the forfeiture charge in Count 3." <u>See</u> Memo. in Support of Motion for Judgment of Acquittal and/or New Trial filed on April 25, 2000 at 4. Because the court has denied the motion for judgment of acquittal as to Counts 1 and 2, the court also denies the motion with respect to Count 3.

II.    <u>Motion for New Trial</u>

    A.    <u>Evidentiary Issues</u>

        1.    <u>Special Agent Gerald Lawson</u>

Brooks argues that the court erred in excluding evidence "that Lawson had previously given false information on two occasions to his supervisor regarding office investigations."

In January 1999, Special Agent Robert Aiu accused Special Agent Lawson of having been untruthful on November 10, 1998, when asked about the disappearance of a stuffed bird from

00061

the DEA office, and, on December 30, 1998, when asked about who had initiated an inquiry in the DEA office. The DEA's Office of Professional Responsibility conducted an investigation into Aiu's allegations and cleared Special Agent Lawson of wrongdoing, finding that, while Lawson had not been entirely forthcoming when questioned by Aiu, the alleged incidents did not call into question Lawson's honesty or integrity.

On March 21, 2000, the government moved in limine to exclude this information. Brooks filed no written opposition to the motion, but orally opposed it, arguing that Aiu's allegations were relevant to Lawson's credibility. On April 4, 2000, the court granted the government's motion in limine on the ground that the prejudicial value of the impeachment material outweighed its probative value under Fed. R. Evid. 403. The allegations by Aiu against Lawson did not concern Lawson's conduct during the Brooks investigation or, for that matter, in any other criminal investigation; nor did it involve the use of a government informant. Because the allegations by Aiu against Lawson involved minor disagreements irrelevant to Lawson's honesty and integrity, the court found that their prejudicial value outweighed their probative value and excluded those allegations from trial. See United States v. Streit, 962 F.2d 894, 901 (9th Cir.), cert. denied, 506 U.S. 962 (1992) (affirming a lower court's exclusion of three internal Federal Bureau of

00062

Investigation documents because, "while the documents might have some limited impeachment value, . . . their probative value was outweighed by the danger of unfair prejudice, confusion of the issues and undue delay").

          a.    Exclusion Did Not Violate Brady v. Maryland.

Brooks argues that the court's exclusion of Aiu's allegations violates Brady v. Maryland, 373 U.S. 83 (1963). Brooks misapprehends Brady.

Brady imposes on the government the obligation to provide a defendant with exculpatory evidence. See United States v. Steinberg, 99 F.3d 1486, 1489 (9th Cir. 1996); Shaffer, 789 F.2d at 687 (under Brady, "the failure of the prosecutor to disclose evidence that is both favorable to the accused and material to either guilt or punishment violates due process"). The government satisfied its obligation by informing Brooks' counsel of Aiu's allegations against Lawson by letter dated February 2, 2000. Thus, there was no Brady violation.

In support of his Brady argument, Brooks cites United States v. Strifler, 851 F.2d 1197, 1201-02 (9th Cir. 1988). At issue in Strifler was the district court's decision, after an in camera review, to prohibit disclosure to a defendant of certain information in a witness' probation file. By contrast, this court ruled that information about Aiu's allegations had to be given to Brooks, and the information was, in fact, turned over to

-14-

00063

defense counsel on February 2, 2000. Thus, <u>Strifler</u> is inapplicable.

Brooks also relies on <u>United States v. Henthorn</u>, 931 F.2d 29, 31 (9th Cir. 1991), and <u>United States v. Calise</u>, 996 F.2d 1019, 1021 (9th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1078 (1994).

Under <u>Henthorn</u>, "the government has a duty to produce personnel files requested by the defense if the information in the files is material to the defense."[5] <u>Calise</u> at 1021. In <u>Calise</u>, an ATF agent's personnel record, submitted by the government and inspected <u>in camera</u> by the court, showed that the agent "had, in a previous case, been characterized by a federal magistrate as giving testimony that was 'absolutely incredible.'" <u>Id.</u> The government submitted a statement by the magistrate judge undermining his earlier conclusion, and the district court refused to release the material in the ATF agent's personnel file. The Ninth Circuit reversed, finding that "the agent's trial testimony in this case might have been differently regarded by the jury if the defense had been able to bring out what was in his file." <u>Id.</u>

---

[5]   Brooks repeatedly refers to the government's violation of <u>Henthorn</u> in failing to turn over Lawson's entire personnel file. The court is unclear whether such a request was made by defense counsel, as is required under <u>Henthorn</u>. Even if such a request was made, the court, given the disclosure of the Aiu allegations and the absence of any showing by Brooks that other portions of the file were relevant to his defense, declines to grant a new trial on that basis.

00064

In contrast to <u>Calise</u>, the government in this case, in keeping with a court order, turned over the material concerning Aiu's allegations to the defense. Thus, <u>Strifler</u>, <u>Henthorn</u>, and <u>Calise</u> are not in issue.

      b. <u>Brooks' Right of Confrontation Was Not Violated.</u>

Brooks argues that the court's refusal to allow him to question Lawson about Aiu's allegations violated his Sixth Amendment right of confrontation.

While the Confrontation Clause guarantees the right of an accused "to be confronted with the witnesses against him," that right is not unlimited. <u>See</u> <u>United States v. Torres</u>, 937 F.2d 1469, 1473 (9th Cir. 1991) (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986)), <u>cert. denied</u>, 502 U.S. 1037 (1992). "'[T]rial judges retain wide latitude insofar as the Confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant.'" <u>Id.</u> (quoting <u>Van Arsdall</u>, 475 U.S. at 679); <u>see</u> <u>United States v. Dees</u>, 34 F.3d 838, 843 (9th Cir. 1994) (a district court has discretion to impose reasonable limits on cross-examination).

To determine whether a defendant's Sixth Amendment right to confront witnesses has been violated, the court asks:

-16-

1) whether the excluded evidence was relevant; 2) whether other legitimate interests outweighed the defendant's interest in presenting the evidence; and 3) whether the exclusion of the evidence left the jury with "'sufficient information' upon which to assess the credibility" of the witness. See United States v. James, 139 F.3d 709, 713 (9th Cir. 1998).

Aiu's allegations concerned conduct that occurred after the Brooks investigation had been completed and did not pertain to any criminal investigation. The allegations, instead, dealt with office politics and who had said what about administrative matters in the DEA office. Lawson was cleared of wrongdoing by the DEA's Office of Professional Responsibility. That offfice's conclusion bolsters the exclusion of the evidence from trial. See United States v. Gonzalez, 71 F.3d 819, 835-36 (11th Cir. 1996) (finding that the Sixth Amendment's Confrontation Clause was not violated by the lower court's refusal to allow a defendant to question an arresting officer about an internal affairs investigation relating to the defendant's arrest because the officer was eventually cleared of all charges).

Because Lawson was cleared of wrongdoing, prejudice and confusion of issues were likely to result from cross-examination on those allegations.

At trial, Lawson was subjected to vigorous cross-examination by defense counsel in numerous areas designed to uncover any bias or prejudice.[6] Accordingly, the court finds that the Confrontation Clause was not violated when the court refused to allow Brooks to cross-examine Lawson on Aiu's allegations.

Even if the court erred in excluding the allegations by Aiu against Lawson, a new trial is not warranted. There was considerable evidence against Brooks from a variety of sources other than Lawson. The jury had Brooks' own taped conversations, the testimony of Randy Wong and James Gravely, detailed financial analyses, and cellular telephone records. Given the considerable evidence at trial, a new trial is not warranted.

        c.   <u>Lawson Did Not Commit Perjury.</u>

Brooks further argues that a new trial is warranted because Lawson allegedly committed perjury when cross-examined at trial. Despite the court's ruling on the motion in limine pertaining to Aiu's allegations, Brooks' counsel asked Lawson during trial whether Lawson would be untruthful in an

---

[6]  Brooks says repeatedly that Lawson perjured himself because he was on "pins and needles at his job" and needed to "convict[] someone like Brooks." Absolutely no testimony at trial supports this assertion, nor has the court discovered any information supporting this self-serving conclusion. In fact, the undisputed evidence at trial was that Brooks had been arrested and the investigation had been completed <u>before</u> Aiu made his allegations against Lawson.

-18-

investigation. Lawson said he would not be untruthful. Lawson said he would tell the truth to a superior or to the court in any investigation and had always done so. Counsel for the government then objected, a bench conference was held, and defense counsel was instructed by the court not to inquire further on that subject given the court's motion in limine ruling.

Brooks does not establish that Lawson perjured himself. Lawson appears to have thought that he was being asked about having lied in any criminal investigation, not in an administrative inquiry. Moreover, Lawson's statements must be viewed in the light of the motion in limine ruling, which Lawson heard the court issue orally. Lawson knew that evidence about Aiu's allegations was not to be elicited at trial, and his responses to defense counsel's questions must be considered in the context of Lawson's legitimate expectation that those matters were not included in the cross-examination. To hold otherwise would be to allow a party to subvert this court's rulings on motions in limine by asking a witness about excluded material, only to claim perjury later.

2. Michael Rothermund

Brooks argues that the court erred in excluding "the file" of Special Agent Michael Rothermund. The court never excluded Rothermund's entire personnel file. On a motion in

00068

limine, the court merely excluded information that Rothermund had signed a consent-to-search form acknowledging himself as a witness to an owner's consent in an unrelated drug investigation. Rothermund wrongfully believed that he could sign the consent form even though he had not been present when consent was given. The court excluded this information under Rule 403 of the Federal Rules of Evidence as largely irrelevant and unduly prejudicial. There was no allegation in the present case that Rothermund had signed any document under the same or an analogous misunderstanding. Brooks does not show the materiality of the evidence in issue.

Moreover, Brooks cannot establish a <u>Brady</u> violation involving Rothermund's file. As discussed above, <u>Brady</u> sets forth the government's duty to provide exculpatory information to the defendant. The information in question was provided to Brooks' counsel by the government in a letter dated March 21, 2000.

### 3. Curtis Worsham

Brooks argues that the court erred in refusing to admit evidence that "Wong had told Curtis Worsham that Wong admitted lying about Defendant being his drug supplier and Wong said that he got drugs from his brother."[7] According to Brooks,

---

[7] The following is Brooks' version of events:

the Honorable Susan Mollway acknowledged that she had made a mistake in not letting witnesses

-20-

22. <u>Multiple Conspiracy Instruction</u>

Brooks claims that his counsel was ineffective in failing to request a multiple conspiracy jury instruction. As there was no evidence of a multiple conspiracy, Brooks' counsel was not ineffective in failing to request such an instruction.

23. <u>Investigation</u>

Brooks argues that his counsel was ineffective in "fail[ing] to do a reasonable investigation pertaining to Brooks' case." According to Brooks, he "will be able to show many areas that he requested [his counsel] to investigate." Brooks, however, does not identify these areas of investigation. Nor does he indicate what evidence would have been obtained. Absent this information, the court cannot say that the outcome of the trial would have been different.

## CONCLUSION

For the reasons stated above, the court DENIES Defendant's Motion for Judgment of Acquittal and/or New Trial. Because Brooks has previously flooded this court with paper and submitted more memoranda on a single motion than allowed by court rules, the court reminds him that, now that the court has ruled, the papers that remain for him to file are a sentencing statement and other papers relating to his sentencing hearing. The court orders Brooks not to file documents other than those relating to his sentencing hearing unless he first obtains leave

-64-

00113

of court.  The court also cautions Brooks that it is improper to use a sentencing statement to revisit matters on which the court has already ruled.

     IT IS SO ORDERED.

     DATED:  Honolulu, Hawaii, September 11, 2000.

                                      SUSAN OKI MOLLWAY
                                      UNITED STATES DISTRICT JUDGE

United States v. Brooks; Cr. No. 98-00591 SOM; ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

00114