RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 25 2006
DISTRICT OF HAWAII

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 23 2006
DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
MAY 25 2006
at ___ o'clock and ___ min ___
SUE BEITIA, CLERK

Jorge Casas #94250-198
F.D.C. Honolulu unit 5-a
P.O. Box 30080
Honolulu, Hi. 96820

May 22, 2006

Honorable Helen Gilmore
District Judge
Honolulu, Hawaii.

Re: <u>United States v. Casas,</u> CR.NO.00-00184 HG

Dear Honorable Helen Gilmore,

I know that it is improper to address you directly regarding my criminal matter, being the fact that I am represented by counsel. However, there seems to be a conflict of interest between my attorney and I. Please allow me to explain: Spanish is my first language, therefore I am writing this through translation. As you may know I am charged in a multiple count conspiracy. My trial is scheduled July 17, 2006. As to (FRCP) rule 12, 16, and (Crim. LR 16.1) and relevant court decisions. I have made specific demands for all discovery. As to (FRCP), rule 6(e)(3)(C)(ii), I recently made a request for counsel to motion to inspect Grand Jury minutes which was denied on May 19, 2006. I specifically requested counsel to add to his motion a case that is relevant, and part of my discovery, <u>United States v. Marino,</u> CR.NO. 00-00185 SOM-BMK. In that case there has been misconduct of such gravity that it has caused there case to be dismissed. As you will review the misconduct was not just on the part of D.E.A. Agent M. Rothermund, the Government has part in this misconduct as well. (see attached Marino case). Defense counsel failed upon my request to include the Marino case (see attached letter to Mr. Park), which was dated May 9, 2006. Counsel had not come to see me untill the day before the hearing May 18, 2006. Counsel failed to provide the Government's response to that motion untill the day after the motion was denied. On the grounds stated for denying if that motion was insufficient to support the said request. I believe if counsel would have complied with my request to add the Marino case then clearly good cause would have shown. The Sixth Amendment right to counsel is the right to effective assistance of counsel, "conflict free". After the hearing I requested counsel to immediately appeal the magistrate's ruling to the district

judge. Counsel stated (misleading the defendant) that if we appeal this it will take up to two years. Which I know that is false. Your honor I've already had problems in the past with previous attorney's, and I do not want to have to continue my trial again do to this conflict of interest. Therefore I will request your honor to please try to remedy our problems so we may proceed. After what ever remedy is taken I will request that counsel appeal the denial of the motion to inspect Grand Jury minutes, more specifically adding the Marino's case for good cause shown. Thank you for your time!

Sincerely,

05-21-2006
Date

Jorge Casas
Jorge Casas #94250-198

Dear Mr. Parks,

Thank you for providing, the memorandum, procedural, and law regarding Grand Jury transcripts. I am aware of these procedures. In respects to the Fed.R.Crim.P. rule 6(e), and to the motion we plan to submit. I believe that we should add more then just that F.B.I. letter, judge Gilmore has already denied other defendant's attempts to challenge based on the F.B.I. letter alone. The other material I've provided as to the Morino case that was in my discovery should be a sufficient add in to show of other misconduct of this agent Rothermund in order to qualify us as rule 6 would require. The Steven Brooks case may not be relevant to my case but it will help to prove our misconduct claim. If judge Gilmore should deny our motion to inspect then I trust we would appeal that immediately, promptly moving on Fed.R.Crim.P. rule 16(a)., under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 31 L.Ed. 104 (1972). Brady, rule. as was done on the Brooks case.

If there is anything else that I may do to get in your way please let me know, just kidding Mr. Parks, again I know you know your job and you know it well I'm just trying to assist in anyway possible after all I'm the one that has to do the time.

Date 05-09-06

THANK YOU SINCERELY,

Jorge Casas

1        CASE AGENT:  After reviewing the report, Your
2   Honor, I do not recall showing the actual report and
3   saying, "Hey, read through it."  I do remember going over
4   the report and asking, you know, "Your supplier was Soto,
5   half kilo; is that correct?"  "Yes."  Stuff to that
6   effect.  I don't recall -- and I asked Special Agent Pa,
7   who was with me on the debriefings, if he recalled me ever
8   giving the report to him and doing it.  I don't recall
9   doing that, no.
10       THE COURT:  And what did Agent Pa say?
11       CASE AGENT:  He says he doesn't recall me doing
12  that as well.
13       THE COURT:  So the government's position is you
14  have -- at least -- regardless of this lack of recollection
15  on showing it to the witness, you certainly don't have a
16  signed copy; is that your position?
17       CASE AGENT:  On our reports the only -- he does
18  not sign anything.  The only time we ever do signed copies
19  would be if it's a signed statement.
20       THE COURT:  And he says he corrected something.
21       CASE AGENT:  There is an amount -- after
22  reviewing the 6 that's when I went back to my office to
23  check the dates to see if I could have prepared the report.
24  And after checking the dates I could have prepared the
25  report.  And there is one correction, but it's in my

NOTE: This case agent Rothermund is very incompetent
and misleading as to what the C.I. testified to

```
 1   writing.  So my recollection --
 2           MR. MUEHLECK:  Your handwriting.
 3           CASE AGENT:  In my handwriting.  So my
 4   recollection would be, if I was given it to him to make
 5   changes, that he would have wrote the change in possibly.
 6           THE COURT:  Okay.  So you're saying he didn't
 7   review it because the change is in your handwriting.  You
 8   might have reviewed the substance of your report with him,
 9   he might have told you something when you asked him to
10   confirm a certain thing, he changed the amount from what
11   you were asking him to confirm, then you wrote in the new
12   amount?  Is that what you think might have happened?
13           CASE AGENT:  Yes.  On one occasion I did notice
14   that change in the report.  And I'm not saying he did
15   not -- hundred percent did not review this or did not look
16   at it.  I do not recall that, honestly.
17           THE COURT:  Okay.  Well, Mr. Muehleck?
18           MR. MUEHLECK:  Bring the witness in and show him
19   the report and ask him.
20           THE COURT:  Yeah.
21           MR. MUEHLECK:  Same way with the debriefing
22   letter, if we can -- that's in another file, Judge.
23           THE COURT:  Well, let's just wait until we get
24   all the documents before we bring him up.
25           Any other proposals, Mr. Ross?
```

1     MR. ROSS: I think Mr. Rothermund said he went
2  over this thing with him. I wonder if we can see that, if
3  we don't have the signed one.
4     MR. MUEHLECK: I'd like Agent Rothermund to tell
5  us how he went over this because my understanding of Jencks
6  is, unless he reads it to him verbatim and he affirms it or
7  denies it or accepts it or changes it, it ain't Jencks.
8  That's my understanding of the law.
9     THE COURT: I think that's true. It has to be an
10 affirmative adoption.
11    MR. MUEHLECK: I'll let Agent Rothermund explain
12 how it was reviewed, the contents of it, if it was verbatim
13 or just a subject was asked.
14    MR. ROSS: Well, I only went by what the witness
15 said so far. Whether he's confused or not, I don't know.
16    THE COURT: The witness testified that he
17 reviewed something, made corrections, and signed it, which
18 is somewhat confusing, which I don't blame Mr. Ross for
19 probing.
20    MR. MUEHLECK: No, neither do I.
21    THE COURT: But before I show you this report
22 more than Agent Rothermund I really think I would like to
23 hear from the witness.
24    MR. MUEHLECK: We agree.
25    THE COURT: You know, because, if there's a

```
 1   conflict, well, it's a different issue no matter what Agent
 2   Rothermund says.  So I sure wish we could get Mr. Seitz on
 3   the line here.
 4             I highly doubt that this witness signed something
 5   without his lawyer being present; so, you know, if we're
 6   talking about signing something, which is what he testified
 7   to --
 8             MR. MUEHLECK:  They don't sign debriefing
 9   reports, and he did not give a signed statement at the time
10   of his arrest.  This is news to me.  I didn't remember the
11   proffer letter until Miss Sheehan told me, but we give
12   routinely a letter before we have an agent interview a
13   defendant that agree that the statements won't be used
14   against him except in cross-examination.
15             THE COURT:  So we have all seen this form.
16             MR. MUEHLECK:  It's our standard proffer letter.
17             THE COURT:  Let's see what's going on.  It
18   sounded like he meant something other than that.
19             Okay.  We'll go off the record and wait.
20        (Discussion off the record.)
21             THE COURT:  We're back on the record.
22             MR. MUEHLECK:  Go ahead.
23             MS. SHEEHAN:  We didn't find the signed copy.  My
24   guess is that, as it frequently happens, the defense
25   attorney -- we never got our signed copy back.  I, however,
```

NOTE: In short D.E.A.AGENT ROTHERMUND AND The A.U.S.A. KEEPS TRYING TO COVER UP THIS ISSUE

1   signed?

2   A   Yes.

3   Q   And you're talking about DEA reports or summary or
4   what; do you know?

5   A   This letter, that's the one I signed.

6   Q   Is there some other document you were asked to review
7   or make corrections on; is that what your testimony was
8   today?

9   A   Yes, I did.

10  Q   And what was that?

11  A   That was the summary of my statements.

12         MR. MUEHLECK:  I've marked 79, a debriefing
13  report, which is the only one I'm aware of, Judge,
14  completed by Agent Rothermund.

15         THE COURT:  Okay.

16  BY MR. MUEHLECK:

17  Q   Take a look at that, please.  Flip through it.  Go
18  ahead.

19  A   (Witness complying.)

20  Q   Okay.  Have you looked at that?

21  A   Yes, sir.

22  Q   Have you seen that before?

23  A   Yes.

24  Q   Who showed it to you?

25  A   Mr. Rothermund.

```
 1   Q    When was that, do you recall?
 2   A    2 -- February 23d?
 3   Q    I don't know.  I'm just asking.
 4   A    Yeah, that was in February 2001.
 5   Q    Did you read the entire thing and make corrections or
 6   what?
 7   A    Yes.
 8            MR. MUEHLECK:  Okay.  That answers the questions,
 9   Judge.  I'm not aware of that.
10            THE COURT:  Well, I'm going to let --
11            MR. MUEHLECK:  They should have a copy.
12            THE COURT:  Yes, they should.
13            MR. BROWER:  Your Honor, I would make a motion to
14   dismiss the charges with prejudice for failure to provide
15   Jencks material.
16            THE COURT:  Well, hold on.  Why don't you take a
17   look at this document first, and then we'll see that.
18            I'm going to have the courtroom deputy go ahead
19   and make copies.  And then I'll give defense counsel an
20   opportunity to review it.  And, certainly, Mr. Fujioka and
21   Mr. Brower, you also can reopen your cross-examination.
22            And, Mr. Brower, I'll be happy to listen to your
23   argument, but I think you should first look at it, we
24   should all look at it, and then we'll figure out where to
25   go.
```

NOTE: Here is the first in part that they moved for dismissal with prejudice **"JENKS"** violation