1

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                    FOR THE DISTRICT OF HAWAII
 3
 4   UNITED STATES OF AMERICA,    )
                                  )   CR 00-00185 SOM-BMK
 5                  Plaintiff,    )
          vs.                     )   Honolulu, Hawaii
 6                                )   November 16, 2001
     04 THOMAS MARINO, SR.,       )   9:00 A.M.
 7   05 ANA MARINO,               )
     06 TOMAS MARINO, JR.,        )   Testimony of Felipe
 8                                )   Ruiz-Castro
                    Defendants.   )
 9   _____)
10
               PARTIAL TRANSCRIPT OF JURY TRIAL
11        BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                UNITED STATES DISTRICT JUDGE
12
13   APPEARANCES:
14   For the Government:     THOMAS MUEHLECK, ESQ.
                             LORETTA SHEEHAN, ESQ.
15                           Office of the U.S. Attorney
                             PJKK Federal Bldg.
16                           300 Ala Moana Blvd., Ste. 6100
                             Honolulu, HI 96850
17
     For the Defendant
18   Thomas Marino, Sr.:     STUART N. FUJIOKA, ESQ.
                             Nishioka & Fujioka
19                           Davies Pacific Ctr.
                             841 Bishop St., Ste. 224
20                           Honolulu, HI 96813

     For the Defendant
21   Ana Marino:             ARTHUR E. ROSS, ESQ.
                             735 Bishop St., Ste. 430
22                           Honolulu, HI 96813

     For the Defendant
23   Tomas Marino, Jr.:      SCOT S. BROWER, ESQ.
                             1088 Bishop St., Ste. 803
24                           Honolulu, HI 96813
25
```

1  Q    Well, Mr. Ruiz, you were questioned before you signed
2  your agreement as to whether or not you agreed to it;
3  right?
4  A    Yes.
5  Q    And you indicated that you were doing it voluntarily
6  and nobody was forcing you to do it; true?
7  A    Yes.
8  Q    And that's true today. Would you agree that you did
9  that voluntarily without anybody forcing you to do it?
10 A    Yes, it's true.
11 Q    And in conjunction -- strike that.
12      In the superseding indictment that you were named
13 in there was approximately 23 counts against you, wasn't
14 there?
15 A    In the superseding?
16 Q    Yeah.
17 A    There was more than that.
18 Q    Oh, how many more was there?
19 A    More than a hundred.
20 Q    More than a hundred counts. And you pled to two;
21 right?
22 A    Yes.
23 Q    And the 98 may be dismissed, depending upon what you
24 do here; isn't that right?
25 A    Yes, sir.

1  Q    Now, in your agreement you pled guilty to criminal --
2  Continuing Criminal Enterprise; is that right?
3  A    Yes.
4  Q    Could you explain to us what that is.
5  A    It is any person engaged on a continuing -- a series
6  of offenses against to the United States.
7  Q    Anybody engaged in a series of offenses; that's your
8  understanding?
9  A    A series of offenses against the United States.
10 Q    Did you understand that you had to agree that you had
11 directed and supervised at least five individuals in that
12 enterprise that you were in?
13 A    Yes, sir.
14 Q    And that was true -- when you agreed in your plea
15 bargain or your agreement, that was true that you had
16 actually supervised and directed at least five people in
17 your operation; isn't that right?
18 A    Yes, sir.
19 Q    Were they all Mexican aliens?
20 A    No.
21 Q    What's your understanding with regard to supervision
22 of the five -- direction and supervision?  What's your
23 understanding of what you were doing to fit within that
24 framework of directing and supervising five people in your
25 criminal enterprise?

1   A   That I told them what to do.
2   Q   You controlled their actions; is that right?
3   A   Only on our business.
4   Q   Your drug business.
5   A   Yes.
6   Q   You told them where to go?
7   A   Yes.
8   Q   You told them who to get the supply from?
9   A   Yes.
10  Q   Would that include the people that you would send to
11  bring in the drugs for you? Were they within your
12  supervision?
13  A   Yes.
14  Q   Did you know anything about Mr. Tomas Marino, Jr.,
15  other than the fact that he was the son of Thomas Marino?
16  A   No.
17  Q   That's because your contact with him was very limited?
18  A   That's right.
19  Q   Mr. Ruiz, did you maintain records for the La
20  Fogata --
21  A   Yes, sir.
22  Q   -- Restaurant business?
23  A   Yes.
24  Q   Did you maintain records of supplies?
25  A   Yes.