ORIGINAL

JEFFREY T. ARAKAKI 4093
ATTORNEY AT LAW
1188 Bishop Street, Ste. 1604
Honolulu, Hawaii 96813
Telephone: (808) 531-5517

Attorney for Defendant

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 18 2007

at ____ o'clock and ____ min. ____
SUE BEITIA, CLERK

## IN THE  UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 00-00184HG |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT JORGE |
| vs. | ) | CASAS' SUPPLEMENT TO |
| | ) | SENTENCING |
| | ) | MEMORANDUM; |
| JORGE CASAS, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | Date: June 29, 2007 |
| | ) | Time: 10:30 a.m. . |
| | ) | Judge: HELEN GILLMOR |
| | ) | |

## DEFENDANT JORGE CASAS' SUPPLEMENT TO SENTENCING MEMORANDUM

DEFENDANT JORGE CASAS, by and through his court-

appointed counsel, Jeffrey Arakaki, files the following memorandum and

respectfully asks this Honorable Court to consider the factors presented in

determining a sentence which is "sufficient, but not greater than necessary"

to address the issues of punishment, deterrence, and rehabilitation.

Title 18 U.S.C. Section 3553 requires a sentencing court to "impose a sentence sufficient, but not greater than necessary," to accomplish the statutory purposes of sentencing. 18 U.S.C. Section 3553(a). Section 3553(a)(2) states that such purposes are:

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant, and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)  the kinds of sentences available;

    (3)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (4)  the need to provide restitution to any victims of the offense.

-2-

The statute permits the Court, in determining the particular sentence to be imposed, to depart downward when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to such a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described [by the guidelines]." 18 U.S.C. Section 3553(b).

In <u>United States v. Koon</u>, 116 S.Ct. 2035 (1996), the Supreme Court held that an appellate court owes substantial deference to a district court's decision to depart from the sentencing guidelines range and may not reverse unless the district court abuses its discretion. "[I] is not the role of an appellate court to substitute its appropriateness of a particular sentence." <u>Koon</u>, 116 S.Ct. at 2046. In reaffirming the judicial independence to grant departures, the Supreme Court explained that there is room under the guidelines for federal judges to exercise traditional sentencing discretion" to consider every convicted person as an individual and every case as a unique study in the human feelings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. <u>Id</u>. at 2053. According to the Supreme Court, it was not congress' purpose to withdraw all sentencing discretion from the United States District Court Judge. <u>Id</u>.

Koon also explains that a departure potentially may be based on any ground that the Sentencing Commission has not proscribed. Federal Courts may not categorically rule out departure factors because that would usurp the Commission's policy-making authority. Id. at 2050. Lastly, Koon makes clear that the departure inquiry is fact-based. "The relevant question . . . is . . . whether the particular factor is within the heartland given all the facts of this case." Id. at 2047.

In order for this Court to impose a sufficient sentence, Section 3661 clearly states that no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court may receive and consider. This statutory language overrides the advisory policy statements of the sentencing guidelines, which lists as several factors which are not relevant to sentencing such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. Section 5H1. The directives of the Supreme Court in United States v. Booker, 125 S.Ct. 738 (2005) and Sections 3553(a) make clear that sentencing courts may no longer uncritically apply the guidelines

and should consider all the factors necessary to determine a sufficient and just sentence. Because the guidelines are advisory only and not binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland'," United States v. Ranum, 353 F.Supp.2d 984, 987 (E.D.Wis., 2005). ". . . after Booker, courts can now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of the mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family times and responsibilities," United States v. Menyweather, 431 F.3d 692, 700 (9th Cir. 2005).

In the instant case, Jorge Casas is a 34 year old Mexican national whose parents divorced when he was very young. The defendant represents that his mother remarried when he was four and that his relationship with his step-father was "bad" and that he was mistreated by him. Mr. Casas was raised, for the most part, by his maternal grandmother. He states in his letter that he was also brought up by his mother, but that she was always working. (See letter attached as Exhibit A) As far as his father, Mr. Casas met him for

the first time after the divorce when he was twenty. He does not have a good relationship with his father, only his mother remains supportive of him. (See paragraph 68 of the Presentence Report)

Mr. Casas immigrated to the United States, alone, at the age of 15 to support his family in Mexico. Mr. Casas has two daughters by Leah Cardenas who lives in Los Angeles, California. He awaits a letter of support from Ms. Cardenas who is aware of his legal problems and with whom he continues to have a good relationship. (See paragraph 69 of the Presentence Report)

Mr. Casas is presently engaged to Patricia Beltran and they have a young daughter. (See paragraph 71 of the Presentence Report) Ms. Beltran relates that, "Although (Mr. Casas) has made some mistakes in is life, he is a very good man, very responsible and has responded to most of my needs. He has always been a very diligent and attentive man." As his letter to the Court indicates, Mr. Casas promised himself that he would be there for his family. (See letter attached as Exhibit A) Ms. Beltran appears to corroborate this, "He is the father of my child and has always been very a very responsible parent. He loves his daughter very much." (See letter attached as Exhibit B)

-6-

The defendant suffers from a number of ailments requiring medical attention as well as medication. (See letter attached as Exhibit A) "Dr. Leonardo F. Giron, Clinical Director, FDC Honolulu, confirmed that the defendant suffers from Diabetes Mellitus for which he is prescribed Metformin. The defendant is also prescribed Lovastatin for elevated cholesterol. Dr. Giron described the defendant's overall clinical status as 'stable.'" (See paragraph 75 of the Presentence Report)

Mr. Casas' "depression" described in paragraph 76 of the Presentence Report continues. The death of his brothers as well as the difficulties of his legal situation continue to haunt him.

The defendant is committed to addressing his drug problem and is seeking to participate in drug and alcohol abuse programs that will assist him with his substance abuse problems. Mr. Casas has never participated in a substance abuse treatment program but is interested in the programs offered by the Bureau of Prisons. (See paragraph 77 of the Presentence Report).

The defendant also recognizes his shortcomings as far as education and employment. He indicates that he received 6 years of education as a youth in Mexico. (See paragraph 78 of the Presentence Report) While in

prison, Mr. Casas has availed himself of programs available to him including a fitness class for which he received a certificate (See Exhibit C attached). Clearly the lack of education is reflected in the type of jobs that Mr. Casas has held.  (See paragraphs 80 thru 82 of the Presentence Report)  He hopes to gain vocational training while incarcerated by the Bureau of Prisons.

As previously mentioned, there is room under the guidelines for federal judges to exercise traditional sentencing discretion " to consider every convicted person as an individual and every case as a unique study in the human feelings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  <u>Koon</u> at 2053.  Mr. Casas exercised his right to go to trial in the instant case.  He continues to exercise his rights in the motions he continues to file and the forthcoming appeal.  Mr. Casas respectfully asks this Honorable Court not to hold the fact that he is exercising his legal rights against him even as he was found guilty of the offenses against him by a jury.  (See letter attached as Exhibit A)

Mr. Casas went to trial because he believed the jury would not find him guilty of the charges against him beyond a reasonable doubt.  That they did so has left him depressed and the sentencing guideline range of from 262

to 327 months of incarceration exacerbates his situation. Even if he is sentenced to the low end of the guideline range he will have lost 20 years of his life to imprisonment. He continues his legal battle because of this dire situation and the hope that he can someday return to his family. He worries that his poor health might aggravate against his return home. Home for Mr. Casas is Mexico. Per paragraph 73 of the Presentence Report, "The Bureau of Immigration and Customs Enforcement verified that the defendant is subject to deportation and that a detainer was filed on 1/26/2005."

Where Mr. Casas' sentence is for an extended period of time, where his incarceration will cost us approximately $2,000 a month and will continue to increase with time, where he will probably be deported to Mexico upon completion of his sentence, and where his health problems might better be addressed if he went home to his family, Mr. Casas respectfully ask this Honorable Court to consider a sentence below the guideline range which is "sufficient, but not greater than necessary" to accomplish the stated purposes of sentencing. Where Felipe Ruiz-Castro and Francisco Servin-Soto were sentenced to 97 months of incarceration in related cases. the inference that can be drawn from these sentences is that

but for the fact that Mr. Casas went to trial and did not cooperate with the Government as these other individuals did, that he probably would have received a similar sentence. Section 3553(a) directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". There is a distinct disparity between 97 months and 262 months even with the variables of acceptance of responsibility and cooperation included. The mandatory minimum sentence is ten years in this particular case. Clearly the law makers felt such a minimum was necessary to address the issue of what was sufficient to address the purposes of sentencing. Failure to accept responsibility is also a consideration, but absence of same because one believes he is not guilty should not unduly aggravate a sentence.

Where Mr. Ruiz-Castro was similarly involved in the relevant conspiracy in much the same capacity as Mr. Casas is alleged to have been, then a 3 level increase above the 10 year mandatory minimum should be considered as to Mr. Casas' sentence as Mr. Ruiz-Castro probably received a 3 level decrease for acceptance of responsibility.

A 3 level increase above a sentence of 10 years for a person with a criminal history category of 2 is a guideline range of from 135-168 months.

-10-

A sentence in this guideline range does not appear to be inconsistent with a sentence that is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing while avoiding "unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." Such a sentence will also allow for Mr. Casas to get home to his family where he might better deal with his medical problems and it will save us the cost of an unnecessarily extended prison sentence.

Furthermore, the commentary in Section 4A1.3 of the Guidelines Manual allows the Court to consider a departure where it "concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.' Mr. Casas indicates that the 2 Sales of Tickets to Improper Person offenses which occurred in Los Angeles when he was 19 years old were misdemeanor offenses and the 27 to 34 month increase in the guideline range because of same seems excessive. He asks the Court to consider this in coming to a fair sentence in his case.

Accordingly, we respectfully asks this Honorable Court to consider incarceration which would be "sufficient, but not greater than necessary" to address the issues of punishment, deterrence and rehabilitation, while at the

-11-

same time addressing humanitarian issues and avoiding unwarranted

sentencing disparities.

Jorge Casas asks the Court to be merciful.

DATED: Honolulu, Hawaii, June 15, 2007.

_____
JEFFREY ARAKAKI