Jorge Casas
Reg.No. 94250-198
P.O. Box 30080
Honolulu, HI. 96820

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| United States of America | ) | CR.No. 00-00184 HG |
|---|---|---|
| Plaintiff, | ) | **MEMORANDUM OF LAW SUPPORTING** |
| | ) | **MOTION REQUESTING COURTS TO INVOKE** |
| vs. | ) | **ITS SUPERVISORY POWERS TO SET-ASIDE** |
| | ) | **VERDICT AND ORDER A NEW TRIAL.** |
| Jorge Casas | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF REQUEST TO INVOKE SUPERVISORY POWERS.**

### Inception:

In the instant case the defendant has been deprived of procedural "Due Process" of the Fifth Amendment, pursuant to Fed.R.Crim.P. Rules 6, 12, 16, 26.2, 18 U.S.C. 3500 "Jencks", local rules of the U.S. District Court (Crim.LR 16.1) and relevant Court decisions, the Sixth Amendment right to understand the nature and cause of accusations and the right to trial counsel "conflict free". For reasons set forth herein will show the defendant has been deprived of a fair trial.

### Backround:

As expressed on the defendant's pro-se motion for the appointment of new counsel (docket #799), "Spanish is my first language, it is as it should be considered a disability".

Prior to, during and after trial, the defendant and defense counsel were experiencing conflicting interests, amounting into a total break down in communications severely affecting the attorney-client relationship, therefore, defense counsel and the defendant made several attempts in trying to: replace, withdraw, appoint or substitute new trial counsel, (docket #'s 694-698-728-732-740-758 and 765) but was

-2-

ordered to proceed to trial anyways.

The defendant has <u>only</u> now learned, when an interpreter is appointed, the Government conforms the need <u>not</u> to provide discovery in ones native language. With all due respects, the defendant has never been able to properly understand the proceedings or the interpreter's trial notes. (docket #799 exhibit A #4). The defendant has tried his best to comprehend his criminal matter, however, when the legal terminology comes in, even an interpreter has difficulty in translating the meanings from one language to another

The Sixth Amendment right to understand the nature and cause of accusations is a right that must be protected by the Judicial system. In <u>United States v. Bailon-Santana</u>, No. 04-50079 (9th Cir.12/06/05), "[t]he Statutory requirement that a translator in Federal Court be qualified as an expert". The Court pointed out, the use of interpreters, who have been certified under the Court Interpreters Act 28 U.S.C. §§ 1827-28, "helps ensure criminal defendants understand the proceedings". To be certified, an interpreter "must pass a rigorus written and oral examination", the Court noted, "many people claim 'fluency' in a foreign language", it said but "[t]here are few persons in the United States who can interpret with the degree or precision and accuracy at the Federal Court level".

With this reasoning and comparing the interpreter's trial notes demonstrates the inability to properly translate as required under the above stated Statute, which raises questions into the interpreters education, backround and certification.

The defendant's language barrier should have placed defense counsel into a much higher standard of review. Counsel should have made sure everything was done accordingly as due process requires. The defendant had already experienced language problems with his "two" previous attorneys and feared he would suffer prejudice, here in the District of Hawaii by not being able to fully understand his criminal matter. Therefore, immediately after the appointment of defense counsel (MR. Park), the defendant requested through counsel for a change of venue pursuant to Fed.R.Crim.P. Rule 21, (docket #703-720). Defense counsel misunderstood the reason for the request (which

was his language disability to properly understand the proceedings and discovery).

Counsel stated to the Courts "the reason the defendant makes this request, 'he feels the attorneys here are no good'". This was untrue and that motion was denied, (docket #709-720). The defendant strongly believed the change in venue was essential in receiving a fair trial. It is a common practice of law, dealing with Mexican Nationals in the District of California with interpreters that must be qualified under a more stringent standard as required at the Federal Court level, to assure the defendant understands the proceedings.

The defendant found himself forced to seek assistance from FDC staff, aids and fellow inmates in reviewing what discovery he had, however, it needed to be translated. With the interpreter not being readily available, the defendant was also forced to seek translations from fellow inmates who are not qualified and have no experience in Federal law. This violates among other things the attorney-client privileged communication Clause of the Sixth Amendment, adding to the conflicts between counsel and defendant.

While researching through the defendant's discovery, an FBI letter appeared (docket #799 exhibit B#5), suggesting misconduct by the lead investigator in the defendants case, DEA agent M. Rothermond. Upon further review, another case surfaced that is relevant and part of the defendant's discovery, USA v. Marino, CR.No. 00-00185 SOM-BMK 11/16/01. The Judge in that case seemed to acknowledge negligents on the part of agent Rothermonds investigation Id at 97.

The defendant made a request through counsel to investigate further into the possible misconduct. Defense counsel made a formal request for the production of the Grand Jury proceedings (docket #690), however, defense counsel failed the defendants request to include the Marino case, which may have given the additional weight needed for a showing of possible misconduct and the production of the material sought. This motion was denied (docket #693-695).

When the defendant discovered defense counsel left out this very important factor, the defendant immediately wrote to inform the District Court Judge, the Honorable Helen Gillmor on May 22, 2006, received May 23, 2006 and filed May 25, 2006 (docket #698 page

-4-

1 and 2 of 9) see also (docket #799 exhibit C#6), and also informed the Courts of a conflict of interests that had been occurring between counsel and the defendant.

The defendant then respectfully requested counsel to re-file, specifically adding the Marino case (docket #709), which was denied, the defendant never received the written order "grounds stated" for the denial.

Prior to trial, defense counsel lied to the defendant in a material way (docket #799 exhibit F#9), and accused the defendant of having finger-prints on packages of drugs seized. This was untrue, and made the defendant suspicious of counsel not protecting the defendant interest. Again the defendant brought this to the attention of the Courts, only to have this referred to as just a mistake. This so called mistake just furthered the conflicts as they became worse.

To further complicate the matter, the defendant believes defense counsel failed the defendants interest by not calling agent Rothermond to the stand, especially when he knew of the possible misconduct during the Grand Jury proceedings, and believes this violates the confrontation Clause of the Sixth Amendment.

After trial with a verdict of guilty, the defendant made several attempts trying to contact defense counsel before the seven day limitation expired to motion for a new trial as required under Fed.R.Crim.P. Rule 33 for Brady violations, counsel never responded with in the required time frame, however, the defendant notified the District Courts before the time frame exceeded, on 8/22/06 (docket #760).

**Argument:**

In cases where the trial Judge erred by denying a request for substitute counsel, the Ninth Circuit has reported that the Federal Courts are nearly unanimous in their holding that an irreconcilable conflict between a defendant and his attorney that leads to a breakdown in communications can prevent an attorney from serving as the type of advocate guaranteed by the Sixth Amendment, as interpreted in such cases as Anders v. California, 386 U.S. 738, 18 L.Ed. 2d 493, 87 S.Ct. 1396 (1967); United States v. Cronic, 466 U.S. 648, 80 L.Ed. 2d 657, 140 S.Ct. 2039 (1984); Plumlee v. Del Papa, No. 04-15101 (9th Cir.2005).

In <u>United States v. Hamilton,</u> 391 F.3d 1066, 76 Crl 210 (9th Cir.2004), the Ninth Circuit relied on <u>Holloway v. Arkansas,</u> 435 U.S. 475 (1978), to hold that counsel's absence during a portion of a suppression motion was structural error. The Ninth Circuit quoted from Circuit case law stressing <u>Holloways</u> reliance on the idea that "[w]hen no counsel is provided, or counsel is prevented from discharging his normal functions, the <u>evil</u> lies in what the attorney does not do, and is either not readily apparent on the 'record', or occurs at a time when no 'record' is made" (emphasis added).

Nevertheless, prior to trial defense counsel made specific discovery requests "for a complete and not limited"... see attached exhibit "A". Although the Government insists that the discovery obligations has been met prior to trial with an open file policy, is incorrect and misleading in "two" aspects. **1st)** Prior to, and--- during trial the Government had to produce discovery that the defense did not have or could not reasonably obtain (docket #709-741-746). **2nd)** The Government insists their is no "Jencks" material available, exhibit "B". However, in <u>USA v. Marino</u> supra <u>Id</u> at 88-89, clearly shows evidence of "Jencks", as defense counsel's in that case moved for dismissal with prejudice for a clear violation of the "Jencks" Act.

As of now the defense still has not received this material i.e., signed statements, letters, or debriefings of Felipe Ruiz-Castro. Below will show the need for this material and how it would have had a significant impact had defense counsel received it before trial.

In the defendant's quest for exculpatory evidence, inwhich happens to be denied in every attempt, counsel of "record" succeeded in one of his motions and received as shown in exhibit "B", 19 pages of agent Rothermond's rough notes and just recently provided 24 pages 6 days of report of investigations of the debriefing of Ruiz-Castro, but nothing signed as shown above as "Jencks".

When a comparison is made to the material recently provided by the Government in exhibit "C" (rough notes) and exhibit "D" report of investigations (6 days 24 pages) in money amounts Ruiz-Castro alleges the defendant invested i.e., 30, to 35,000 U.S. cur-

-6-

rancy. Now compare to Ruiz-Castro's trial testimony in USA v. Marino, CR.No. 00-00185 SOM-BMK 12/14/2001 Id at 14 in money amounts of $40,000 see exhibit "E". Next, compare this to another case that is relevant and part of the defendant's discovery USA v.Jaimes, CR.No. 03-00501 SOM 1/07/2004 Id at 16 in money amounts of $50, to 60,000 exhibit "F".

The defendant points out Felipe Ruiz-Castro had a prior felony drug conviction, was indicted on a 142 count conspiracy which included heroin, cocaine, crystal meth-amphetamine, and marijuana, admitted being leader/organizer and operating a continuing criminal enterprize (CCE), and only received a sentence of 97 months.

This is a significant difference in the alleged money amounts, and clearly this is more than just inconsistent testimony. "This is perjury under oath". Felipe Ruiz-Castro lied and had every reason to lie. Therefore, this material was essential for the preparation of trial, as shown in exhibit "G".

The defendant argues, if defense counsel would have had this material prior to trial i.e., the signed and corrected "Jencks" material as shown in Marino Supra 12/16/2001 see exhibit "H", that the Government insist there is none exhibit "B", defense counsel could have gone much further in his impeachment attempt, had he had this material to show the Courts and Jury.

The defendant's motion for a new trial is based in part on newly discovered evidence i.e., 19 pages "rough note", 6 days 24 pages "report of investigations" and is grounded by the government's none disclosure of information favorable to the defendant, in violation of the discovery order Brady v. Maryland, 473 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963).

In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court announced a single prejudice standard covering all such cases, regardless of whether the exculpatory material were specifically requested by the defense, responsive to a general defense request, or not requested by the defense at all. However, there must be a reasonable probability that had the evidence been disclosed to the defense, the result of the proceedings would have been different. Bagley, 473 U.S. at 682.

**Just received:**

-7-

On June 20, 2007 the defendant just received the Government's response (docket# 811) dated 4/10/2007, regarding the defendant's reconsideration motion of the denial to compel Grand Jury transcripts, and again it was denied. Also, Court orders (docket# 818) dated 5/16/2007 page 1 through 9, regarding pending motions, stating a reserved ruling on the remaining issues raised in the defendant's motion for the appointment of new counsel (docket#799) filed 2/13/2007.

Although some of these issues are being re-visited in this motion, they are put forth in a different approach for the Court's determination. The Court makes clear that any motion for a new trial is governed by Fed.R.Crim.Pro. Rule 33, stating motion deadlines.

**Rule 33(b)(2) OTHER GROUNDS:**

"[A]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within '7 days' after the verdict or finding of guilty". As shown above the defendant believes he has met this Rule, see (docket#760). Not only with a showing of Brady violations, but showing of "conflicting interest" with counsel, and the "right to understand the nature and cause of accusations", in violation of the Sixth Amendment.

As to the Government's response (docket#811) dated 4/10/2007, page 4 paragraphs 5 and 6, the Government has failed to acknowledge the fact that more discovery had to be provided during trial that the defense did not have or could not reasonably obtain (docket#709-741-746), thus discrediting the Government's allegations to the open file policy.

Further, the Government points to the cooperation of Felipe Ruiz-Castro, stating "the defendant's case did not rest exclusively on Ruiz-Castro's testimony", suggesting other evidence the Jury considered, which includes, the wire-tap evidence (that may not have properly obtained as stated in the FBI letter, and possible misconduct)(docket#799 exhibit B#5). Also stating the testimony of Brian Joshua Jones, however, the Government fails to identify that only days before the defendant's trial "Jone" tested positive for methamphetamine use to his probation officers urine-analysis, which clearly estab-

-8-

ishes a credibility issue, "meaning 'Jones' must please the Government to prevent a probation revocation".

The Government makes attempts to be-little the defendant, stating "the defendant fled to Mexico". The defendant did not flee to Mexico, he resides there.

The Government also suggests the defendant tried to conceal his identity when he tried to re-enter the United States, however, the defendant's P-1 Visa was in the defendants full name. In the Mexican heritage under the family tree, out of respect, Mexican people carry on the last names of their Mother, Father, and Grand Parents. The defendants Mother was re-married, therefore, the defendant's full name is Jorge Gonzales Casas Jimenez.

The INS agent testified, it was the date on the Visa that appeared to have been altered, not the name like the prosecutor states. See USA v. Casas, CR.No. 00-00184 HG volume 6 Id at 59.

**Conclusion:**

The defendant has brought before this Honorable Court evidence that shows he has been deprived of a fair trial, with Due Process violations, which includes the right to understand the proceedings, and the Sixth Amendment right to trial counsel conflict free.

A showing has been made of newly discovered evidence, and further discrediting the Government's allegations to the open file policy (docket#746). The defendant did notify the Courts before the "7" day limitation as required by Rule 33 (b)(2)(docket#760) even though trial counsel failed to, perhaps it was due to the conflicts of interest between the defendant and counsel ?

Out of a concern for fairness, the defendant prays this Honorable Court considers the overall circumstances, and in the interest of Justice set-aside verdict and order a new trial. Thank You.

Respectfully Submitted, Honolulu, Hawaii, 06-24-07
                                                    Date

_____
Jorge Casas #94250-198