## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document was duly served upon the parties mentioned below, by hand delivering the same to each of the following:

Susan Cushman
Assistant U.S. Attorney
Office of the U.S. Attorney
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Jeffrey T. Arakaki
Attorney at Law
1188 Bishop Street, Suite 1604
Honolulu, Hawaii 96813

DATED: Honolulu, Hawaii, June 29, 2007.

By:_____

Jorge Casas
Register No. 94250-198
Federal Detention Center
Post Office Box 30080
Honolulu, Hawaii 96820

Defendant,
CR. NO. 00-00184-HG
(U.S. v. Casas)



Jorge Casas
Reg.No. 94250-198
P.O. Box 30080
Honolulu, HI. 96820

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR.No. 00-00184 HG |
| | ) | |
| Plaintiff, | ) | **MOTION REQUESTING COURTS TO INVOKE** |
| | ) | **ITS SUPERVISORY POWERS TO SET-ASIDE** |
| vs. | ) | **VERDICT AND ORDER A NEW TRIAL.** |
| | ) | |
| JORGE CASAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MOTION REQUESTING COURTS TO INVOKE ITS INHERENT SUPERVISORY POWERS.**

NOW COMES, defendant Jorge Casas, with counsel of "record" MR. Jeffery Arakaki and interpreter, requesting counsel to adopt the instant motion, and respectfully request this Honorable Court to invoke its inherent Supervisory Powers to set-aside verdict and order a new trial, pursuant to Fed.R.Crim.Pro. Rules 47, 33, Crim LR 32.1.

This motion is based upon the "Due Process Clause" of the Fifth Amendment, the Sixth Amendment right to trial counsel "conflict free", as set forth in the attached memorandum of law, exhibits and declaration of defendant.

_____,         at Honolulu, Hawaii,    June 29, 2007.
          Date                                                      Date

**Adopted:**

_____.                    _____.
Attorney for Defendant                       Jorge Casas #94250-198

-1-

Jorge Casas
Reg.No. 94250-198
P.O. Box 30080
Honolulu, HI. 96820

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| United States of America | ) CR.No. 00-00184 HG |
| | ) |
| Plaintiff, | ) **MEMORANDUM OF LAW SUPPORTING** |
| | ) **MOTION REQUESTING COURTS TO INVOKE** |
| vs. | ) **ITS SUPERVISORY POWERS TO SET-ASIDE** |
| | ) **VERDICT AND ORDER A NEW TRIAL.** |
| | ) |
| Jorge Casas | ) |
| Defendant. | ) |
| | ) |
| | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF REQUEST TO INVOKE SUPERVISORY POWERS.**

**Inception:**

In the instant case the defendant has been deprived of procedural "Due Process" of the Fifth Amendment, pursuant to Fed.R.Crim.P. Rules 6, 12, 16, 26.2, 18 U.S.C. 3500 "Jencks", local rules of the U.S. District Court (Crim.LR 16.1) and relevant Court decisions, the Sixth Amendment right to understand the nature and cause of accusations and the right to trial counsel "conflict free". For reasons set forth herein will show the defendant has been deprived of a fair trial.

**Backround:**

As expressed on the defendant's pro-se motion for the appointment of new counsel (docket #799), "Spanish is my first language, it is as it should be considered a dis-ability".

Prior to, during and after trial, the defendant and defense counsel were ex-periencing conflicting interests, amounting into a total break down in communications severely affecting the attorney-client relationship, therefore, defense counsel and the defendant made several attempts in trying to: replace, withdraw, appoint or sub-stitute new trial counsel, (docket #'s 694-698-728-732-740-758 and 765) but was

-2-

ordered to proceed to trial anyways.

The defendant has _only_ now learned, when an interpreter is appointed, the Government conforms the need _not_ to provide discovery in ones native language. With all due respects, the defendant has never been able to properly understand the proceedings or the interpreter's trial notes. (docket #799 exhibit A #4). The defendant has tried his best to comprehend his criminal matter, however, when the legal terminology comes in, even an interpreter has difficulty in translating the meanings from one language to another

The Sixth Amendment right to understand the nature and cause of accusations is a right that must be protected by the Judicial system. In United States v. Bailon-Santana, No. 04-50079 (9th Cir.12/06/05), "[t]he Statutory requirement that a translator in Federal Court be qualified as an expert". The Court pointed out, the use of interpreters, who have been certified under the Court Interpreters Act 28 U.S.C. §§ 1827-28, "helps ensure criminal defendants understand the proceedings". To be certified, an interpreter "must pass a rigorus written and oral examination", the Court noted, "many people claim 'fluency' in a foreign language", it said but "[t]here are few persons in the United States who can interpret with the degree or precision and accuracy at the Federal Court level".

With this reasoning and comparing the interpreter's trial notes demonstrates the inability to properly translate as required under the above stated Statute, which raises questions into the interpreters education, backround and certification.

The defendant's language barrier should have placed defense counsel into a much higher standard of review. Counsel should have made sure everything was done accordingly as due process requires. The defendant had already experienced language problems with his "two" previous attorneys and feared he would suffer prejudice, here in the District of Hawaii by not being able to fully understand his criminal matter. Therefore, immediately after the appointment of defense counsel (MR. Park), the defendant requested through counsel for a change of venue pursuant to Fed.R.Crim.P. Rule 21, (docket #703-720). Defense counsel misunderstood the reason for the request (which

-3-

was his language disability to properly understand the proceedings and discovery).

Counsel stated to the Courts "the reason the defendant makes this request, 'he feels the attorneys here are no good'". This was untrue and that motion was denied, (docket #709-720). The defendant strongly believed the change in venue was essential in receiving a fair trial. It is a common practice of law, dealing with Mexican Nationals in the District of California with interpreters that must be qualified under a more stringent standard as required at the Federal Court level, to assure the defendant understands the proceedings.

The defendant found himself forced to seek assistance from FDC staff, aids and fellow inmates in reviewing what discovery he had, however, it needed to be translated. With the interpreter not being readily available, the defendant was also forced to seek translations from fellow inmates who are not qualified and have no experience in Federal law. This violates among other things the attorney-client privileged communication Clause of the Sixth Amendment, adding to the conflicts between counsel and defendant.

While researching through the defendant's discovery, an FBI letter appeared (docket #799 exhibit B#5), suggesting misconduct by the lead investigator in the defendants case, DEA agent M. Rothermond. Upon further review, another case surfaced that is relevant and part of the defendant's discovery, USA v. Marino, CR.No. 00-00185 SOM-BMK 11/16/01. The Judge in that case seemed to acknowledge negligents on the part of agent Rothermonds investigation Id at 97.

The defendant made a request through counsel to investigate further into the possible misconduct. Defense counsel made a formal request for the production of the Grand Jury proceedings (docket #690), however, defense counsel failed the defendants request to include the Marino case, which may have given the additional weight needed for a showing of possible misconduct and the production of the material sought. This motion was denied (docket #693-695).

When the defendant discovered defense counsel left out this very important factor, the defendant immediately wrote to inform the District Court Judge, the Honorable Helen Gillmor on May 22, 2006, received May 23, 2006 and filed May 25, 2006 (docket #698 page

1 and 2 of 9) <u>see</u> <u>also</u> (docket #799 exhibit C#6), and also informed the Courts of a conflict of interests that had been occurring between counsel and the defendant.

The defendant then respectfully requested counsel to re-file, specifically adding the <u>Marino</u> case (docket #709), which was denied, the defendant never received the written order "grounds stated" for the denial.

Prior to trial, defense counsel lied to the defendant in a material way (docket #799 exhibit F#9), and accused the defendant of having finger-prints on packages of drugs seized. This was untrue, and made the defendant suspicious of counsel not protecting the defendant interest. Again the defendant brought this to the attention of the Courts, only to have this referred to as just a mistake. This so called mistake just furthered the conflicts as they became worse.

To further complicate the matter, the defendant believes defense counsel failed the defendants interest by not calling agent Rothermond to the stand, especially when he knew of the possible misconduct during the Grand Jury proceedings, and believes this violates the confrontation Clause of the Sixth Amendment.

After trial with a verdict of guilty, the defendant made several attempts trying to contact defense counsel before the seven day limitation expired to motion for a new trial as required under Fed.R.Crim.P. Rule 33 for <u>Brady</u> violations, counsel never responded with in the required time frame, however, the defendant notified the District Courts before the time frame exceeded, on 8/22/06 (docket #760).

**Argument:**

In cases where the trial Judge erred by denying a request for substitute counsel, the Ninth Circuit has reported that the Federal Courts are nearly unanimous in their holding that an irreconcilable conflict between a defendant and his attorney that leads to a breakdown in communications can prevent an attorney from serving as the type of advocate guaranteed by the Sixth Amendment, as interpreted in such cases as <u>Anders v. California,</u> 386 U.S. 738, 18 L.Ed. 2d 493, 87 S.Ct. 1396 (1967); <u>United States v. Cronic,</u> 466 U.S. 648, 80 L.Ed. 2d 657, 140 S.Ct. 2039 (1984); <u>Plumlee v. Del Papa,</u> No. 04-15101 (9th Cir.2005).

In <u>United States v. Hamilton,</u> 391 F.3d 1066, 76 Crl 210 (9th Cir.2004), the
Ninth Circuit relied on <u>Holloway v. Arkansas,</u> 435 U.S. 475 (1978), to hold that
counsel's absence during a portion of a suppression motion was structural error.
The Ninth Circuit quoted from Circuit case law stressing <u>Holloways</u> reliance on the
idea that "[w]hen no counsel is provided, or counsel is prevented from discharging
his normal functions, the <u>evil</u> lies in what the attorney does not do, and is either
not readily apparent on the 'record', or occurs at a time when no 'record' is made"
(emphasis added).

Nevertheless, prior to trial defense counsel made specific discovery requests
"for a complete and not limited"... <u>see</u> attached exhibit "A". Although the Government
insists that the discovery obligations has been met prior to trial with an open file
policy, is incorrect and misleading in "two" aspects. **lst)** Prior to, and--- during
trial the Government had to produce discovery that the defense did not have or could
not reasonably obtain (docket #709-741-746). **2nd)** The Government insists their is no
"Jencks" material available, exhibit "B". However, in <u>USA v. Marino</u> supra Id at 88-89,
clearly shows evidence of "Jencks", as defense counsel's in that case moved for dis-
missal with prejudice for a clear violation of the "Jencks" Act.

As of now the defense still has not received this material i.e., signed statements,
letters, or debriefings of Felipe Ruiz-Castro. Below will show the need for this mat-
erial and how it would have had a significant impact had defense counsel received it
before trial.

In the defendant's quest for exculpatory evidence, inwhich happens to be denied
in every attempt, counsel of "record" succeeded in one of his motions and received as
shown in exhibit "B", 19 pages of agent Rothermond's rough notes and just recently pro-
vided 24 pages 6 days of report of investigations of the debriefing of Ruiz-Castro, but
nothing signed as shown above as "Jencks".

When a comparison is made to the material recently provided by the Government in
exhibit "C" (rough notes) and exhibit "D" report of investigations (6 days 24 pages) in
money amounts Ruiz-Castro alleges the defendant invested i.e., 30, to 35,000 U.S. cur -

rancy. Now compare to Ruiz-Castro's trial testimony in USA v. Marino, CR.No. 00-00185 SOM-BMK 12/14/2001 Id at 14 in money amounts of $40,000 see exhibit "E". Next, compare this to another case that is relevant and part of the defendant's discovery USA v.Jaimes, CR.No. 03-00501 SOM 1/07/2004 Id at 16 in money amounts of $50, to 60,000 exhibit "F".

The defendant points out Felipe Ruiz-Castro had a prior felony drug conviction, was indicted on a 142 count conspiracy which included heroin, cocaine, crystal meth-amphetamine, and marijuana, admitted being leader/organizer and operating a continuing criminal enterprize (CCE), and only received a sentence of 97 months.

This is a significant difference in the alleged money amounts, and clearly this is more than just inconsistent testimony. "This is perjury under oath". Felipe Ruiz-Castro lied and had every reason to lie. Therefore, this material was essential for the pre-paration of trial, as shown in exhibit "G".

The defendant argues, if defense counsel would have had this material prior to trial i.e., the signed and corrected "Jencks" material as shown in Marino Supra 12/16/2001 see exhibit "H", that the Government insist there is none exhibit "B", defense counsel could have gone much further in his impeachment attempt, had he had this material to show the Courts and Jury.

The defendant's motion for a new trial is based in part on newly discovered evidence i.e., 19 pages "rough note", 6 days 24 pages "report of investigations" and is grounded by the government's none disclosure of information favorable to the defendant, in viola-tion of the discovery order Brady v. Maryland, 473 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963).

In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court announced a single prejudice standard covering all such cases, regardless of whether the exculpatory material were specifically requested by the defense, responsive to a general defense request, or not requested by the defense at all. However, there must be a reasonable probability that had the evidence been disclosed to the defense, the result of the proceedings would have been different. Bagley, 473 U.S. at 682.

**Just received:**

On June 20, 2007 the defendant just received the Government's response (docket# 811) dated 4/10/2007, regarding the defendant's reconsideration motion of the denial to compel Grand Jury transcripts, and again it was denied. Also, Court orders (docket# 818) dated 5/16/2007 page 1 through 9, regarding pending motions, stating a reserved ruling on the remaining issues raised in the defendant's motion for the appointment of new counsel (docket#799) filed 2/13/2007.

Although some of these issues are being re-visited in this motion, they are put forth in a different approach for the Court's determination. The Court makes clear that any motion for a new trial is governed by Fed.R.Crim.Pro. Rule 33, stating motion dead-lines.

## Rule 33(b)(2) OTHER GROUNDS:

"[A]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within '7 days' after the verdict or finding of guilty". As shown above the defendant believes he has met this Rule, see (docket#760). Not only with a showing of Brady violations, but showing of "conflicting interest" with counsel, and the "right to understand the nature and cause of accusations", in violation of the Sixth Amendment.

As to the Government's response (docket#811) dated 4/10/2007, page 4 paragraphs 5 and 6, the Government has failed to acknowledge the fact that more discovery had to be provided during trial that the defense did not have or could not reasonably obtain (docket#709-741-746), thus discrediting the Government's allegations to the open file policy.

Further, the Government points to the cooperation of Felipe Ruiz-Castro, stating "the defendant's case did not rest exclusively on Ruiz-Castro's testimony", suggesting other evidence the Jury considered, which includes, the wire-tap evidence (that may not have properly obtained as stated in the FBI letter, and possible misconduct)(docket#799 exhibit B#5). Also stating the testimony of Brian Joshua Jones, however, the Government fails to identify that only days before the defendant's trial "Jone" tested positive for methamphetamine use to his probation officers urine-analysis, which clearly estab-

ishes a credibility issue, "meaning 'Jones' must please the Government to prevent a probation revocation".

The Government makes attempts to be-little the defendant, stating "the defendant fled to Mexico". The defendant did not flee to Mexico, he resides there.

The Government also suggests the defendant tried to conceal his identity when he tried to re-enter the United States, however, the defendant's P-1 Visa was in the defendants full name. In the Mexican heritage under the family tree, out of respect, Mexican people carry on the last names of their Mother, Father, and Grand Parents. The defendants Mother was re-married, therefore, the defendant's full name is Jorge Gonzales Casas Jimenez.

The INS agent testified, it was the date on the Visa that appeared to have been altered, not the name like the prosecutor states. See USA v. Casas, CR.No. 00-00184 HG volume 6 Id at 59.

## Conclusion:

The defendant has brought before this Honorable Court evidence that shows he has been deprived of a fair trial, with Due Process violations, which includes the right to understand the proceedings, and the Sixth Amendment right to trial counsel conflict free.

A showing has been made of newly discovered evidence, and further discrediting the Government's allegations to the open file policy (docket#746). The defendant did notify the Courts before the "7" day limitation as required by Rule 33 (b)(2)(docket#760) even though trial counsel failed to, perhaps it was due to the conflicts of interest between the defendant and counsel ?

Out of a concern for fairness, the defendant prays this Honorable Court considers the overall circumstances, and in the interest of Justice set-aside verdict and order a new trial. Thank You.

Respectfully Submitted, Honolulu, Hawaii, _June 29, 2007_
                                                    Date

                                                    _Jorge Casas #94250-198_

Jorge Casas
Reg.No. 94250-198
P.O. Box 30080
Honolulu, HI. 96820

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR.No. 00-00184 HG |
| | ) | |
| Plaintiff, | ) | **DECLARATION WRITTEN** |
| | ) | **THROUGH TRANSLATION.** |
| vs. | ) | |
| | ) | |
| JORGE CASAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION.

**I JORGE CASAS, NAMED IN THE ABOVE STYLED CASE, HEREBY DECLARES THE FOLLOWING:**

1) Spanish is my first language, I can barely read and write english;

2) Although the Courts appointed an interpreter, it is very difficult to receive the assistance needed;

3) I try my best to comprehend and assist my attorneys regarding my legal needs;

4) I find myself forced to seek assistance from individuals that have no experience in federal law nor are they qualified to translate my personal legal matters;

5) Prior to trial, I brought to the attention of the Courts problems that were occurring between trial counsel and I;

6) Prior to, and during trial the conflicts between counsel and I just seemed to keep getting worse;

7) Prior to trial defense counsel informed the Courts of an incomplete discovery;

8) With all due respects, prior to and during trial, due to communication problems and what I believe to be inexperience on the part of my Court appointed interpreter, I could not understand the proceedings, especially what occurred during trial or the the interpreters trial notes;

9) Even after trial with a verdict of guilty, defense counsel (MR. Park) and I were still experiencing conflicting interests;

10) I made several attempts in trying to contact MR. Park before the time frame exceeded to motion for a new trial;

DECLARATION THROUGH TRANSLATION USA v. CASAS, RC.No. 00-00184 HG

11) MR. Park failed to respond to my letters, so I was forced to notify the Courts before the Statute of limitations expired as required under Fed.R.Crim.Pro. Rule 33(b)(2) (other grounds);

12) Due to the severe conflicts between MR. Park and I, we both moved the Courts for the appointment of new counsel, which was denied;

13) Finally, on 2/13/2007, with the assistance of fellow inmates through translation, I submitted a formal request for the appointment of new counsel (granted);

14) Sentencing is scheduled for June 29, 2007;

15) Counsel of record motioned for further discovery;

16) Upon the receipt of the discovery received after trial, we discovered and believe it to be newly discovered evidence;

17) Out of a concern for fairness, I am requesting this Honorable Court to grant the attached motion as I believe I have met the criteria required under Fed.R.Crim.Pro. Rule 33 in two aspects; 1) Newly discovered evidence; 2) Other grounds, within that Statutes limitations requirements, Thank You.


I JORGE CASAS, DECLARE UNDER THE PENALTY OF PERJURY OF LAW THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Honolulu, Hawaii,    June 29, 2007
                     _____
                     DATE

                     _____
                     JORGE CASAS #9425-198



**ANTHONY H. YUSI**
ATTORNEY AT LAW_____
A Law Corporation

DILLINGHAM TRANSPORTATION BUILDING
735 BISHOP STREET, SUITE 322
HONOLULU, HAWAI'I 96813
TELEPHONE: (808) 531-8121  ABOGADO
FAX: (808) 531-8121

March 15, 2005

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Rm. 6100
Honolulu, Hawai'i 96850

Re: <u>U.S.A. vs. Jorge Casas (01), Cr. No. 00-00184 HG</u>

Dear Mr. Muehleck:

This will acknowledge receipt of your letter dated March 10, 2005 with enclosures therein provided by you at the Initial Appearance and Arraignment and Plea on March 10, 2005. In addition to the discovery already provided by the government as stated, please accept this as defendant's further discovery request.

Pursuant to Rules 12 and 16, Federal Rules of Criminal Procedure, Local Rules of the U.S. District Court (Crim LR 16.1), and relevant court decisions, request is made for the following additional discover:

I.      Rule 16(a)(1)(A) and (B)Requests:

        a.      All relevant oral and written or recorded statements made by the defendant, which are in the custody or control of the government and which are known to the government or by the exercise of due diligence may become known to the government, including but not limited to draft transcripts of tape recordings in addition to the tape themselves, statements made to the Honolulu Police Department or other law enforcement officers, any governmental agent, any confidential informant, any defendant, written statements made by a defendant to a third person who gave them to a government agent, grand jury testimony of defendant which relate to the offense, charge, booking statements, co-conspirator, or co-defendant



**ANTHONY H. YUSI**
ATTORNEY AT LAW_____
A Law Corporation                          DILLINGHAM TRANSPORTATION BUILDING
735 BISHOP STREET, SUITE 322
HONOLULU, HAWAI'I 96813
TELEPHONE: (808) 531-8121
FAX: (808) 531-8121

March 15, 2005


Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Rm. 6100
Honolulu, Hawai'i  96850

Re: U.S.A. vs. Jorge Casas (01), Cr. No. 00-00184 HG

Dear Mr. Muehleck:

This will acknowledge receipt of your letter dated March 10, 2005 with
enclosures therein provided by you at the Initial Appearance and
Arraignment and Plea on March 10, 2005.  In addition to the discovery
already provided by the government as stated, please accept this as
defendant's further discovery request.

Pursuant to Rules 12 and 16, Federal Rules of Criminal Procedure, Local
Rules of the U.S. District Court (Crim LR 16.1), and relevant court decisions,
request is made for the following additional discover:

I.      Rule 16(a)(1)(A) and (B)Requests:

        a.      All relevant oral and written or recorded statements made by the
        defendant, which are in the custody or control of the government and which
        are known to the government or by the exercise of due diligence may become
        known to the government, including but not limited to draft transcripts of
        tape recordings in addition to the tape themselves, statements made to the
        Honolulu Police Department or other law enforcement officers, any
        governmental agent, any confidential informant, any defendant, written
        statements made by a defendant to a third person who gave them to a
        government agent, grand jury testimony of defendant which relate to the
        offense, charge, booking statements, co-conspirator, or co-defendant

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Two

statements admissible against defendant under F.R.E. 801 (d)(2)(E) if the government does not intend to call said witness.

II.     Rule 16(a)(1)(D) Requests:

    a.    Defendant's prior criminal record (Federal and State).

III.    Rule 16(a)(1)(E) Requests:

    a.    Data, information, records, documents or other evidence which are material to the defense.

    b.    Copies and access to originals of fingerprint and handwriting exemplars.

IV.     Rule 16(a)(1)(F) Requests:

    a.    Results or reports of tests and exams which are in the possession or control of the government and are known to the government or by the exercise of due diligence may become known to the government and which:

        1.    Are material to the defense or the government intends to introduce in its case in chief.
        2.    Results of all expert and/or laboratory tests.
        3.    Access to result samples on which to allow defendant to conduct independent tests.

V.      Rule 16(a)(1)(E), (F) and/or (G) Request for underlying data used in government tests, including but not limited to fingerprint analysis and drug analysis.

VI.     Rule 16(a)(1)(G)Request for Written Summary of Expert Testimony in which government intends to use during case in chief including:

    a.    Notice of expert qualifications
    b.    Summary of expected testimony.
    c.    Basis and reasons for expert's opinion whether or not expert prepares report.

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Two

statements admissible against defendant under F.R.E. 801 (d)(2)(E) if the government does not intend to call said witness.

II.    Rule 16(a)(1)(D) Requests:

    a.    Defendant's prior criminal record (Federal and State).

III.    Rule 16(a)(1)(E) Requests:

    a.    Data, information, records, documents or other evidence which are material to the defense.

    b.    Copies and access to originals of fingerprint and handwriting exemplars.

IV.    Rule 16(a)(1)(F) Requests:

    a.    Results or reports of tests and exams which are in the possession or control of the government and are known to the government or by the exercise of due diligence may become known to the government and which:

        1.    Are material to the defense or the government intends to introduce in its case in chief.
        2.    Results of all expert and/or laboratory tests.
        3.    Access to result samples on which to allow defendant to conduct independent tests.

V.    Rule 16(a)(1)(E), (F) and/or (G) Request for underlying data used in government tests, including but not limited to fingerprint analysis and drug analysis.

VI.    Rule 16(a)(1)(G)Request for Written Summary of Expert Testimony in which government intends to use during case in chief including:

    a.    Notice of expert qualifications
    b.    Summary of expected testimony.
    c.    Basis and reasons for expert's opinion whether or not expert prepares report.

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Three


VII.    Rule 16(a)(2) Requests (As may be waived by the government):

    a.    Any discovery that the government may waive objections to.
    b.    Any discovery that is discoverable by reason of undue hardship on defendant.
    c.    Any discovery that is required by Brady vs. Maryland/Jencks Act/Kyles vs. Whitley/U.S. vs. Bagley/ Giglio vs. United States.

VIII.    Rule 16(c) Requests:

    a.    Government is requested to apprise defendant on a continuing basis any changes affecting information in the discovery.

IX.    Rule 12.1 Responsive Requests (if given):

    a.    Response to defendant's notice of alibi defense (if given).

X.    Rule 12.2 Responsive Requests (if given).

    a.    Response to defendant's insanity defense or a defendant's intent to introduce expert testimony relating to defendant's mental state.

XI.    Rule 26.2, 18 USC § 3500 (Jencks), Rule 12(h), and Local District Court Rules Request.

    a.    Relevant witness statements of witnesses statements including FBI reports, DEA  reports and underlying notes.
    b.    Jencks Act material which would be relevant.
    c.    Agents' rough notes.
    d.    Any notes read back to a witness for corrections.
    e.    Case summary memos.
    f.    Notes used by any witness testifying before the grand jury.
    g.    Diary, notebooks, or notes of any witness.

XII.    Brady v. Maryland, 373 U.S. 83 (1963), U.S. v. Bagley, 473 U.S. 667, 682 (1985), Kyles v. Whitley, 1155 Ct. 1555 (1995), Giglio vs. United States, 405 U.S. 150 (1972), requests for materials either relevant to guilt or to punishment irrespective of good faith or bad faith of the government, including:

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Three

VII.   Rule 16(a)(2) Requests (As may be waived by the government):

     a.   Any discovery that the government may waive objections to.
     b.   Any discovery that is discoverable by reason of undue hardship on defendant.
     c.   Any discovery that is required by Brady vs. Maryland/Jencks Act/Kyles vs. Whitley/U.S. vs. Bagley/ Giglio vs. United States.

VIII.  Rule 16(c) Requests:

     a.   Government is requested to apprise defendant on a continuing basis any changes affecting information in the discovery.

IX.   Rule 12.1 Responsive Requests (if given):

     a.   Response to defendant's notice of alibi defense (if given).

X.    Rule 12.2 Responsive Requests (if given).

     a.   Response to defendant's insanity defense or a defendant's intent to introduce expert testimony relating to defendant's mental state.

XI.   Rule 26.2, 18 USC § 3500 (Jencks), Rule 12(h), and Local District Court Rules Request.

     a.   Relevant witness statements of witnesses statements including FBI reports, DEA reports and underlying notes.
     b.   Jencks Act material which would be relevant.
     c.   Agents' rough notes.
     d.   Any notes read back to a witness for corrections.
     e.   Case summary memos.
     f.   Notes used by any witness testifying before the grand jury.
     g.   Diary, notebooks, or notes of any witness.

XII.  Brady v. Maryland, 373 U.S. 83 (1963), U.S. v. Bagley, 473 U.S. 667, 682 (1985), Kyles v. Whitley, 1155 Ct. 1555 (1995), Giglio vs. United States, 405 U.S. 150 (1972), requests for materials either relevant to guilt or to punishment irrespective of good faith or bad faith of the government, including:

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Four

    a.    Materials that may be from other government agencies:

        1.    Honolulu Police Department reports, records, or data and other governmental files.
        2.    Key witnesses background information.
        3.    Criminal background of witnesses.
        4.    Transcripts of taped conversations.
        5.    List of members of the investigation and/or task force team.
        6.    Confidential file(s) on information(s).
        7.    Transcripts of key witnesses will inconsistent statements in trial transcripts in the public domain.

    b.    Negative exculpatory statements such as statements by witnesses that fail to mention defendant.

    c.    All discovery in all aspects casting doubt upon the witnesses credibility under <u>Brady</u>, <u>Bagley</u>, <u>Giglio</u>, and <u>Kyles</u>, including:

        1.    Prior inconsistent statements.
        2.    Showing bias.
        3.    Pecuniary or other interest.
        4.    Kinship with person adverse to defendant.
        5.    Favors from prosecution to witnesses or other defendants.
        6.    Character of witnesses, including government memorandums, or reports critical of informant, witness, and for co-conspirator(s).
        7.    Witnesses capacity to observe:
            a.    Logistics such as photo testimony to impeach witnesses' statement e.g. that he did not own the safe in his home.
            b.    Use of alcohol or drugs.
            c.    Hypnosis.
        8.    Testimony which is inconsistent with other evidence.
        9.    Pre-sentence reports of witnesses or co-defendants.
      10.    Witnesses inability to recall including drug use.
      11.    Autopsy or other reports.
      12.    Relevant background of any agent who interviewed defendant, including:
            a.    background training, and resume.
            b.    Prior cases agent testified for.
            c.    Agent's personnel file relevant to this case.

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Four

a.    Materials that may be from other government agencies:

   1.   Honolulu Police Department reports, records, or data and other governmental files.
   2.   Key witnesses background information.
   3.   Criminal background of witnesses.
   4.   Transcripts of taped conversations.
   5.   List of members of the investigation and/or task force team.
   6.   Confidential file(s) on information(s).
   7.   Transcripts of key witnesses will inconsistent statements in trial transcripts in the public domain.

b.    Negative exculpatory statements such as statements by witnesses that fail to mention defendant.

c.    All discovery in all aspects casting doubt upon the witnesses credibility under Brady, Bagley, Giglio, and Kyles, including:

   1.   Prior inconsistent statements.
   2.   Showing bias.
   3.   Pecuniary or other interest.
   4.   Kinship with person adverse to defendant.
   5.   Favors from prosecution to witnesses or other defendants.
   6.   Character of witnesses, including government memorandums, or reports critical of informant, witness, and for co-conspirator(s).
   7.   Witnesses capacity to observe:
      a.   Logistics such as photo testimony to impeach witnesses' statement e.g. that he did not own the safe in his home.
      b.   Use of alcohol or drugs.
      c.   Hypnosis.
   8.   Testimony which is inconsistent with other evidence.
   9.   Pre-sentence reports of witnesses or co-defendants.
  10.   Witnesses inability to recall including drug use.
  11.   Autopsy or other reports.
  12.   Relevant background of any agent who interviewed defendant, including:
      a.   background training, and resume.
      b.   Prior cases agent testified for.
      c.   Agent's personnel file relevant to this case.

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Five

13. Materials which tend to impeach a government witness, including:

    a    Formal or informal promises to reward a witness.

    b    Informal understandings.

    c.    Informal plea agreement.

    d.    Plea agreements.

    e.    Agents agreement to "speak a word" or on behalf or put in a good word for a witness or the like about a pending violation/case/problem.

    f.    Government's past or anticipated recommendations, promises or intent to assist witnesses or co-defendants.

    g.    Witnesses parole or probation status.

    h.    Help in forfeiture proceedings or civil or administrative liability.

    i.    Money or other reward.

    j.    Living expenses.

    k.    Medical treatment.

    l.    Transportation expenses.

    m.    Witness protection program.

    n.    Informant status on file.

    o.    Threats for failure to testify.

    p.    Witnesses tax returns.

    q.    Prior criminal convictions.

    r.    FBI rap sheets.

    s.    Reports of polygraph tests.

    t.    Whether witness was target of investigation.

    u.    Benefits provided, including free telephone, contact and conjugal visits, alcohol, clothing, failure to prosecute for drug use, etc.

    v.    Witnesses personal file (federal personnel).

14. Rules and regulations governing procedures in investigation arrests, prosecution of this case from all agencies connected or who worked in this case including the Honolulu Police Department, Federal Bureau of Investigations, Drug Enforcement Agency, Customs.

15. Psychiatric treatment of witnesses.

16. Defendant requests an in camera review of any discovery the government may refuse to disclose.

    d.    Reveal co-conspirator statements the government intends to use at

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Five

13.  Materials which tend to impeach a government witness, including:

    a    Formal or informal promises to reward a witness.

    b    Informal understandings.

    c.    Informal plea agreement.

    d.    Plea agreements.

    e.    Agents agreement to "speak a word" or on behalf or put in a good word for a witness or the like about a pending violation/case/problem.

    f.    Government's past or anticipated recommendations, promises or intent to assist witnesses or co-defendants.

    g.    Witnesses parole or probation status.

    h.    Help in forfeiture proceedings or civil or administrative liability.

    i.    Money or other reward.

    j.    Living expenses.

    k.    Medical treatment.

    l.    Transportation expenses.

    m.    Witness protection program.

    n.    Informant status on file.

    o.    Threats for failure to testify.

    p.    Witnesses tax returns.

    q.    Prior criminal convictions.

    r.    FBI rap sheets.

    s.    Reports of polygraph tests.

    t.    Whether witness was target of investigation.

    u.    Benefits provided, including free telephone, contact and conjugal visits, alcohol, clothing, failure to prosecute for drug use, etc.

    v.    Witnesses personal file (federal personnel).

14.  Rules and regulations governing procedures in investigation arrests, prosecution of this case from all agencies connected or who worked in this case including the Honolulu Police Department, Federal Bureau of Investigations, Drug Enforcement Agency, Customs.

15.  Psychiatric treatment of witnesses.

16.  Defendant requests an in camera review of any discovery the government may refuse to disclose.

    d.    Reveal co-conspirator statements the government intends to use at

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Six

              trial

e.     Existence of electronic surveillance.
f.     Grand jury minutes.
g.     List of government witnesses.
h.     Certified copies of judgments against witnesses.
i.     Transcripts of witnesses' pre-hearing statements.
j.     FRE 404(b) evidence against defendant.

XIII.  Additional Requests:

a.     Honolulu Police Department police reports related to this case.
b.     Copies of all videotapes, audiotapes and photographs.
c.     Co-defendant's statements.
d.     Reports of the fingerprint and drug analysis.
e.     Copies of first Indictment.

Please identify which requests you are unable to comply with, but have said discovery, in order that we can attempt to resolve any outstanding discovery issues. Thank you for your attention to this request.

Sincerely yours,

Anthony H. Yusi
cc: Jorge Casas

Thomas C. Muehleck, Esq.
Assistant United States Attorney
Office of the U.S. Attorney
March 15, 2005
Page Six

        trial
- e.    Existence of electronic surveillance.
- f.    Grand jury minutes.
- g.    List of government witnesses.
- h.    Certified copies of judgments against witnesses.
- i.    Transcripts of witnesses' pre-hearing statements.
- j.    FRE 404(b) evidence against defendant.

XIII.   Additional Requests:

- a.    Honolulu Police Department police reports related to this case.
- b.    Copies of all videotapes, audiotapes and photographs.
- c.    Co-defendant's statements.
- d.    Reports of the fingerprint and drug analysis.
- e.    Copies of first Indictment.

Please identify which requests you are unable to comply with, but have said discovery, in order that we can attempt to resolve any outstanding discovery issues. Thank you for your attention to this request.

Sincerely yours,

Anthony H. Yusi
cc: Jorge Casas



**U.S. Department of Justice**

*United States Attorney*
*District of Hawaii*

---

*PJKK Federal Building*                          (808) 541-2850
*300 Ala Moana Blvd., Room 6-100*          FAX (808) 541-2958
*Honolulu, Hawaii 96850*

March 21, 2007

Jeffrey T. Arakaki, Esq.
1188 Bishop Street, Ste. 1604
Honolulu, HI 96813

   Re:  United States v. Jorge Casas
    Cr. No. 00-00184-01 HG

Dear Mr. Arakaki:

   Reference is made to your request for additional
discovery set forth in your Motion to Extend Motions Deadline in
the above-captioned case filed on March 13, 2007.

   You requested the following:

   a.  "Notes of 6 days of debriefing of Felipe Ruiz (24
pages) by case agents."

   b.  "The transcript of testimony of Government
witnesses to the Grand Jury in the instant case."

   With respect to the first request, I am providing you
with the agent's rough notes which are Bates-stamped 000000001 to
000000019.

Jeffrey Arakaki, Esq.
March 21, 2007
Page 2

With respect to Jenks grand jury transcripts of trial
witnesses, there are none.

Please contact me if you have any questions.

Very truly yours,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By

SUSAN CUSHMAN
Assistant U.S. Attorney

FTN:pr
Enclosures

cc w/Encls: The Honorable Helen Gillmor
Chief United States District Judge

FEB 99   △   STARTED DEALING COCAINE
CASAS SOS

[97-98] CASAS HAD LIVED IN MAUI, HI AND
WORKED AT KIMO'S RESTARANT, LAHANA, HI.
CASAS LEFT MAUI, HI IN THE
END OF 1998.   CASAS HAD MEMO
SELLING COCAINE FOR CASAS.  MEMO
LEFT AND WENT TO MEXICO.
IN FEB/99, MEMO CASAS CALLED △ AND
ASKED △ IF HE WANTED TO TAKE OVER
MEMO'S PLACE.  △ HAD A LOT OF
BILLS BECAUSE OF THE RESTARANT.

LA FOGATA '99
— 20,000+ NOT PAID
2N' 20,000+
ATE 30,000 —
CASAS 35,000
BUT © WAS NOT
IN PAPERS DUE TO
LEGAL ALIEN STATUS
△ — BELIEVED ©
# WAS DRUG
PROCEEDS.
CASAS GAVE
△ C+'S AD IN MEXICO
△ PUT INTO 1ST
HAWAIIAN BANK
ACCOUNT
LATER HAD
CASAS' NAME
P-TON PARENTLY
SO FRIENDS
DRAW A
PAY CK AND
LISTED AS OWNER
— △ TALKS C+B'S
NONE SEE PAYROLL
A/E TO COMPLAINT
ABOUT HIMSELF
A/E TO CASAS
BEING CHECKED
BY POLICE,

{ TIGER   **3** LOADS
  LEAH    1 LOAD
FROM CASAS
  CASAS   2 LOAD
  JIACA   1 LOAD }

RUIZ

USED DRUG # TO
PAY BILLS      LA FOGATA
PAID — SUPPLIERS
— EMPLOYEES
— EQUIPMENT.

{ △ MADE PAYMENTS ON TOYOTA 4-RUNNER
  W/ DRUG #. △ PUT DOWN #10,000
  ON CREDIT CARD.
△ PAID CREDIT CARD MONTHLY W/
  A COMBINATION OF # FROM DRUGS
  AND FROM RESTARANT
△ DELIVERED DRUGS IN 4 RUNNER }

{ △ BOUGHT HONDA IN 1995 W/ WIRE
  THEY GOT FROM A CREDIT FROM ☆ PAID OFF
  # FROM LEGIMATE JOB.
  NO DRUG # WENT INTO THE HONDA
△ DELIVERED DRUGS WITH
  HONDA ON OCCASION. }

△ BOUGHT CAMRO IN 1995.  13,000+ PAID
△ STARTING IN 2/99  CASAS 000000011

U.S. Department of Justice
Drug Enforcement Administration

### REPORT OF INVESTIGATION
*(Continuation)*

| 1. File No. | 2. G-DEP Identifier |
|---|---|
| ████████ | ████████ |

3. File Title

RUIZ, Felipe et al

4.
Page 14 of 24

5. Program Code

6. Date Prepared
02/23/01

of 1998. He stated that CASAS had MEMO selling cocaine for him (CASAS).
He stated that MEMO left Maui, HI, and returned to Mexico. He stated that
in February of 1999, CASAS called and asked him if he wanted to take
MEMO's place selling cocaine for him. He stated that he decided to sell
cocaine for CASAS, because of a lot of bills at the LA FOGATA MEXICAN
RESTAURANT. He stated that he had received approximately 7 shipments of
cocaine from CASAS. He stated that the loads of cocaine were transported
from the mainland to Maui, HI, as follows: three by JONES, one by
CARDENAS, one by HUIHUI and two by CASAS.

15. RUIZ stated that he used drug proceeds to pay for supplies, the
salaries of employees and equipment at the LA FOGATA MEXICAN RESTAURANT.
He stated that he used drug proceeds to pay his monthly payments on his
1999 Toyota Four Runner. He stated that he paid off the 1999 Toyota Four
Runner by charging $10,000 on his charge card. He stated that he used
drug proceeds and money made from the restaurant to make monthly payments
n his charge card. He stated that he delivered drugs in his 1999 Toyota
.our Runner. He stated that he and his wife, Jennifer RUIZ, purchased the
1995 Honda with a couple thousand dollars from a legitimate job. He
stated that no drug money went into the 1995 Honda. He stated that he did
deliver drugs in the 1995 Honda on occasion. He stated that he purchased
the condominium in 1995. He stated that he paid $13,000 and the monthly
payments with legitimate monies. He stated that starting in February of
1999, he paid the monthly mortgage on the condominium with money from the
restaurant combined with drug money. He stated that he used the telephone
at the condominium to call drug customers and CASAS. He stated that he
utilized Western Union wire transfers to pay couriers and their expenses.
He stated that he might have used the RIV-ENVIA wire service to pay
couriers, but he did not remember.

16. RUIZ stated that in January of 1999, F. MORA-GARCIA and himself
invested $20,000 each (legitimate money) into the LA FOGATA MEXICAN
RESTAURANT. He stated that CASAS invested $30,000 to $35,000 (believed to
be drug proceeds) into the restaurant, but he was not on the papers due to
his alien status. He stated that CASAS gave him checks in Mexico that he
deposited into a First Hawaiian bank account. He stated that later,
CASAS' name was put on the paperwork for the restaurant so he could draw a

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1 - Prosecutor

000000339

$A1$                    1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3
                                    )
 4    UNITED STATES OF AMERICA,     )   CR 00-00185 SOM-BMK
                                    )
 5                    Plaintiff,    )   Honolulu, Hawaii
             vs.                    )   November 14, 2001
 6                                  )   8:30 A.M.
      04 THOMAS MARINO, SR.,        )
 7    05 ANA MARINO,                )   Testimony of Felipe
      06 TOMAS MARINO, JR.,         )   Ruiz-Castro
 8                                  )
                      Defendants.   )
 9    _____ )

10

11              PARTIAL TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE SUSAN OKI MOLLWAY
12               UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14    For the Government:        THOMAS MUEHLECK, ESQ.
                                 LORETTA SHEEHAN, ESQ.
15                               Office of the U.S. Attorney
                                 PJKK Federal Bldg.
16                               300 Ala Moana Blvd., Ste. 6100
                                 Honolulu, HI 96850
17
      For the Defendant
18    Thomas Marino, Sr.:        STUART N. FUJIOKA, ESQ.
                                 Nishioka & Fujioka
19                               Davies Pacific Ctr.
                                 841 Bishop St., Ste. 224
20                               Honolulu, HI 96813

21    For the Defendant
      Ana Marino:                ARTHUR E. ROSS, ESQ.
22                               735 Bishop St., Ste. 430
                                 Honolulu, HI 96813

23    For the Defendant
      Tomas Marino, Jr.:         SCOT S. BROWER, ESQ.
24                               1088 Bishop St., Ste. 803
                                 Honolulu, HI 96813
25
```



1   A     From Mexico.

2   Q     Did he give you money during the time you knew him?

3   A     Yes.  He was a part owner, too, of the restaurant.

4   Q     Part owner of the restaurant?

5   A     Yes.

6   Q     How much money did he give you?

7   A     About $40,000.

8   Q     The $40,000 that was at your house, you said that was

9   seized by the DEA at the time of your arrest?

10  A     Yes.

11  Q     What happened to that money?

12  A     The DEA or the government, they seize it, yeah.  I

13  don't know what happens.

14  Q     Did they forfeit it also?

15  A     Yes.

16  Q     Did you have a telephone at the restaurant?

17  A     Yes.

18  Q     And during '99 and 2000 did you have a cellular

19  telephone?

20  A     Yes.

21  Q     Did you use those phones?

22  A     Yes.

23  Q     What did you use them for?

24  A     To communicate, do transactions.

25  Q     What type of transactions, Mr. Ruiz?

#1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3
                              )
 4    UNITED STATES OF AMERICA,    )   CR 03-00501 SOM
                              )
 5                 Plaintiff,  )   Honolulu, Hawaii
          vs.                 )   January 7, 2004
 6                            )   9:00 A.M.
      MICHAEL TORRES JAIMES,   )
 7                            )   Testimony of Felipe
                 Defendant.   )   Ruiz-Castro
 8    _____)

 9            PARTIAL TRANSCRIPT OF JURY TRIAL
10      BEFORE THE HONORABLE SUSAN OKI MOLLWAY
              UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Government:      THOMAS C. MUEHLECK, ESQ.
                              Office of the U.S. Attorney
14                            PJKK Federal Bldg.
                              300 Ala Moana Blvd., Ste. 6100
15                            Honolulu, HI 96850

16    For the Defendant:       PAMELA O'LEARY TOWER, ESQ.
                              American Savings Bank Twr.
17                            1001 Bishop St., Ste. 1330
                              Honolulu, HI 96813
18
      Official Court Reporter: Debra Kekuna Chun, RPR, CRR
19                            United States District Court
                              300 Ala Moana Blvd., Ste. C285
20                            Honolulu, HI 96850
                              (808) 534-0667
21

22

23

24
      Proceedings recorded by machine shorthand, transcript
25    produced with computer-aided transcription (CAT).
```

```
 1    Q    How much money did he put in?

 2    A    Fifty, 60,000.

 3    Q    Was that legal money or drug money?

 4    A    Drug money.

 5    Q    Did you get drugs from Mr. Casas?

 6    A    Yes, sir.

 7    Q    He supplied cocaine?

 8    A    Yes.

 9    Q    How much would you get from Mr. Casas a month?

10    A    At least one key.

11    Q    Were there times that you got more than a kilo at a

12   time?

13    A    Yes.  And how much would Mr. Casas charge you?

14    A    At first 26, 27.  We went down till 23.

15    Q    You say 26 or 27.  Are you talking $2600 or

16   twenty-seven --

17    A    No, thousand.  Thousand.

18    Q    Twenty-six or $27,000?

19    A    Yes.

20    Q    Per --

21    A    Per kilo.

22    Q    And that was where?  In Hawai'i he would deliver it,

23   or did you have to get it or what?

24    A    Yes.  In Hawai'i.

25    Q    Where was he at the time living?
```

22

1          And you said that he invested some money into this

2    restaurant business; correct?

3    A.    Yes.

4    Q.    How much did he invest?

5    A.    Around 25,000, 30,000.

6    Q.    Okay.

7          And you put in some money; correct?

8    A.    Yes.

9    Q.    How much did you put in?

10   A.    Around the same.

11   Q.    Okay.

12         And you said that Mr. Casas put in some money;

13   correct?

14   A.    Yes.

15   Q.    And that -- how much did he put in?

16   A.    He put around the same, too.

17   Q.    And how much was that, exactly?

18   A.    Well, I would eh 30-, to 40,000, something like that.

19   Q.    At this point you say 30-, to 40,000?

20   A.    Yes.

21   Q.    And, with this money -- you used for capital improvement

22   to actually build a restaurant; correct?

23   A.    Yes.

24   Q.    And that's the restaurant in that photograph that the

25   prosecutor showed?

1    FRIDAY, NOVEMBER 16, 2001              1:10 O'CLOCK P.M.

2            (In open court without the jury:)

3            THE COURT:  Okay.  You can be seated.

4            We're resuming this matter to discuss the DEA

5    report, which all defense counsel have had a chance to

6    review; so I'm happy to hear from them.  I'll say this

7    first:  that this DEA report is deemed by me to be a

8    statement by the witness, Mr. Ruiz.  He testified he

9    reviewed it.  He said he corrected it.  He even said he

10   signed it; although, no one here has seen a signed copy.

11   But in any event he could definitely be said to have

12   adopted the corrected version of the report so that I do

13   consider this to be a statement producible under Jencks.

14           The record here is that actually the defendants

15   had before trial requested Jencks Act material.  The

16   government was not required to produce it until after Mr.

17   Ruiz had completed his direct exam, but it was not produced

18   at the completion of the direct examination of Mr. Ruiz,

19   and so there is a clear violation of the Jencks Act.

20           MS. SHEEHAN:  May I be heard on that issue, Your

21   Honor, on the clear violation?

22           THE COURT:  Well, hold on.

23           MS. SHEEHAN:  Yes, Your Honor.

24           THE COURT:  I recognize that the defendants don't

25   need to show prejudice to establish a violation of the